Darren BERRY, et al., Respondents,

v.

**VOLKSWAGEN GROUP OF
AMERICA, INC.,**
Appellant.

No. SC 92770.

Supreme Court of Missouri,
En Banc.

April 9, 2013.

Rehearing Denied May 28, 2013.

John W. Cowden and David M. Eisenberg of Baker Sterchi Cowden & Rice LLC in Kansas City, and Daniel V. Gsovski of Herzfeld & Rubin PC in NY, for Volkswagen.

Patrick J. Stueve, Todd E. Hilton, Jack D. McInnes and Bradlet T. Wilders of Stueve Siegel Hanson LLP in Kansas City, for consumers.

Bradford B. Lear and Todd C. Werts of Lear & Werts LLP in Columbia, for The Missouri Association of Trial Attorneys.

Hugh F. Young Jr. of the Product Liability Advisory Council Inc. in Reston, VA, Mark A. Behrens of Shook, Hardy & Bacon LLP in Washington, DC, and Robert T. Adams of Shook Hardy & Bacon LLP in Kansas City, for the Product Liability Advisory Council Inc.

GEORGE W. DRAPER III, Judge.

*Introduction*

Volkswagen Group of America, Inc. (hereinafter, "Volkswagen") seeks review of the trial court's judgment awarding the attorneys in the underlying class action lawsuit attorneys' fees. Volkswagen raises five points on appeal challenging the lodestar amount and the multiplier that the trial court applied.

This Court finds that the lodestar amount was within the trial court's discretion. Further, while this is the first time this Court is addressing the use of a multiplier, there is no reason to usurp the longstanding principle in Missouri that our trial judges are considered experts in determining the proper amount of attorneys'

fees. Accordingly, the judgment is affirmed.

### Facts and Procedural History

In 2005, Darren Berry filed suit against Volkswagen, alleging violations of the Missouri Merchandising Practices Act (hereinafter, "MMPA"), chapter 407 *et seq.*, RSMo 2000,[1] in that certain Volkswagen vehicles contained defective window regulators. Berry sought to certify a nationwide class on behalf of owners and lessors of Volkswagen vehicles. In 2007, the nationwide class certification was denied, and the trial court limited the class to plaintiffs in Missouri (hereinafter, "Class").

Class and Volkswagen engaged in lengthy pretrial matters and multiple attempts to settle. On May 17, 2010, as Class prepared to go to trial, Volkswagen offered to settle with terms favorable to Class. The proposed settlement divided Class members into two groups. The first group, who repaired the window regulators in their vehicles, would be reimbursed for the repair or replacement and compensated $75 for each incident. The second group contained Class members who had not repaired a window regulator, which would receive a payment of $75 and have the window regulator repaired at an authorized Volkswagen dealer within ninety days of the date of the mailing of the notice. Volkswagen agreed to pay the costs of notifying Class, administering the settlement, and payment of reasonable attorneys' fees to Class counsel.

The trial court preliminarily approved the settlement and ordered notice to be sent to Class in June 2010. A third-party company acted as the claims administrator, publishing a Class notice in four Missouri newspapers and mailing notice to 22,304 Class members. Of the mailed notices, 6,150 were returned as undeliverable; the claims administrator later resent notice to 4,083 updated addresses.

Class members were required to submit their claims by October 11, 2010. Class members in the first group were required to submit a receipt for purchase of the part and/or to submit "one or more receipts(s) that describe(s) each documented incident or workshop visit," showing that "a Window Regulator failure was diagnosed, repaired, replaced or purchased and ... contain[ing] the date and location of the facility." The claims form defined "receipt" and provided for an alternative certification procedure if a receipt was not available. Class members in the second group were required to "set forth ... a statement of the date, nature and circumstances of each such failure, the reasons why [Class member had not] had the failure repaired until now, and the names, addresses and telephone numbers of the other persons who have knowledge of these facts and can verify them."

When the claims period terminated, 177 claims had been made, and 130 of those were determined to be valid. The total payout to Class members was $125,261.

After the settlement for Class was approved and paid out, the trial court held a three-day hearing regarding attorneys' fees pursuant to section 407.025.2, which authorizes reasonable attorneys' fees in a class action under the MMPA. Class counsel testified they calculated they expended 7,910 hours during the lengthy litigation.[2]

---

1. All further statutory references are to RSMo 2000.

2. An approximate breakdown of Class counsels' time was: fourteen percent of the time was billed at $650 per hour, forty-two percent between $400–500 per hour, fifteen percent at $375 per hour, and one percent at $252 per hour. The remaining twenty-eight percent was billed for the professional staff priced at $200 per hour.

Class counsel determined their lodestar[3] amount to be $3,087,320. Additionally, Class counsel sought a multiplier of 2.6, arguing that the fee award represented approximately twenty-five percent of the potential total value of the settlement based upon their expert's calculation that each window regulator would fail 6.5 times over the life of the vehicle.

Volkswagen argued against the multiplier. Volkswagen stated it was not arguing that Class counsel "billed time that they shouldn't have billed" and was not "nitpicking with them about the number of hours they spent on certain matters or whether they should have spent a certain number of hours on the case." Further, Volkswagen did not dispute the "experience, talent, and lawyering that was done in the case by [Class] counsel."

The trial court determined the hourly rate and amount of time expended by Class counsel was reasonable and the lodestar amount was $3,087,320. The trial court stated it would apply a multiplier of 2.0 to the lodestar amount for a total award of $6,174,640 in attorneys' fees. The trial court further awarded Class counsel all of their expenses and assessed court costs against Volkswagen. Volkswagen appeals the trial court's judgment.

Volkswagen brings this five-point appeal, challenging the trial court's judgment in awarding Class counsel attorneys' fees. First, Volkswagen claims the trial court abused its discretion in its attorneys' fee award because the fee award was disproportionate to the result obtained for Class in that the fee award is forty-nine times the amount of Class recovery. Second, Volkswagen avers the trial court erred in its attorneys' fee award because the award

fails to bear any relation to the award obtained for Class. Third, Volkswagen contends the trial court erred in applying the multiplier to the lodestar because there were no rare or exceptional circumstances. Penultimately, Volkswagen asserts the trial court's award offends public policy and undermines the purposes of a class action. Finally, Volkswagen argues the award violates its due process rights. Since all of Volkswagen's arguments challenge the trial court's award of attorneys' fees, they will be addressed together.

### Motion to Dismiss the Appeal

■ Class filed a motion to dismiss Volkswagen's appeal, which was taken with the case. Class asserts that the appeal is in direct violation of the plain and unambiguous language of the written settlement agreement, which specified Volkswagen would ·pay attorneys' fees and expenses that were approved by the trial court.

The settlement required Volkswagen to pay Class counsel's "reasonable" attorneys' fees. Class counsel focused on the procedure to determine the amount of reasonable attorneys' fees and expenses, but nowhere in the settlement is there language waiving the right to appeal the final determination of attorneys' fees. To the contrary, the settlement contemplates an appeal of attorneys' fees and provides for the finality of the settlement, even in the circumstances when there is "any appeal from any order relating [to the fee application] or reversal or modification thereof. . . ." The motion to dismiss the appeal is overruled.

### Federal Use of a Multiplier

The United States Supreme Court has set forth its guidelines for federal cases in

---

**3.** The lodestar amount is determined by multiplying the number of hours reasonably expended by a reasonable· hourly rate in the community. *Alhalabi v. Mo. Dept. of Nat.*

*Resources,* 300 S.W.3d 518, 530 n. 6 (Mo.App. E.D.2009); *Trout v. State,* 269 S.W.3d 484, 487 n. 1 (Mo.App. W.D.2008).

*Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010), stating when it is appropriate to apply a multiplier after awarding the lodestar amount in fee-shifting cases.

In *Perdue,* the Supreme Court stated there is a strong presumption that the lodestar amount is the amount of reasonable attorneys' fees, but that presumption could be overcome. *Id.* at 1673. The Court identified six rules when evaluating whether a multiplier is appropriate. First, a reasonable fee is a fee that is sufficient to persuade an attorney to commence representation of a meritorious case; it is not to provide an economic windfall to the attorney. *Id.* at 1672–73. Second, awarding the lodestar amount presumptively achieves the objective of inducing a capable attorney to engage in meritorious litigation. *Id.* at 1673. Third, an enhancement to the lodestar amount "may be awarded in 'rare' and 'exceptional' circumstances." *Id.* (internal citations omitted). Fourth, "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Id.* Accordingly, the rationale that the case was novel or complex is not a ground for an enhancement because these factors are reflected in an attorney's billable hours. *Id.* Additionally, the "quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." *Id.* (internal citation omitted). Fifth, the burden of proving an enhancement is necessary is placed on the fee applicant. *Id.* Finally, "a fee applicant seeking an enhancement must produce 'specific evidence' that supports the award." *Id.*

An enhancement to the lodestar amount may be made when there are superior results obtained as a result of superior attorney performance. *Id.* at 1674. However, just because an attorney prevails, it does not mean axiomatically that the attorney's performance was superior. The "outcome may result from inferior performance by defense counsel, unanticipated defense concessions, unexpectedly favorable rulings by the court, an unexpectedly sympathetic jury, or simple luck." *Id.* None of these enumerated circumstances justify an enhanced award.

The Supreme Court noted several specific circumstances when an enhanced award should be given. First, it may be appropriate to enhance the lodestar amount when the method of determining the hourly rate "does not adequately measure the attorney's true market value.…" *Id.* Second, it may be appropriate to enhance the lodestar amount when "the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted." *Id.* Third, it may be appropriate to enhance the lodestar amount when "an attorney's performance involves exceptional delay in the payment of fees." *Id.* at 1675. While recognizing that typically, under a fee-shifting arrangement, the attorney will not receive compensation until successful resolution of the litigation, an enhancement may be proper when there is an unanticipated delay, unjustifiably caused by the defense. *Id.*

*Attorneys' Fees Awards in Missouri*

*a. Lodestar Amount*

The trial court's award of attorneys' fees is reviewed for an abuse of discretion. *Hill v. City of St. Louis,* 371 S.W.3d 66, 81 (Mo.App. E.D.2012). The trial court is deemed an expert at fashioning an award of attorneys' fees and may do so at its discretion. *Western Blue Print*

*Co., LLC v. Roberts,* 367 S.W.3d 7, 23 (Mo. banc 2012). "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.* (quoting *Howard v. City of Kansas City,* 332 S.W.3d 772, 792 (Mo. banc 2011)).

In Missouri, the general rule is that "attorney fees are not awarded to every successful litigant." *Lucas Stucco & EIFS Design, LLC v. Landau,* 324 S.W.3d 444, 445 (Mo. banc 2010). However, attorneys' fees may be awarded when they are provided for in a contract or when they are authorized statutorily. *Id.; Essex Contracting, Inc. v. Jefferson Cnty.,* 277 S.W.3d 647, 657 (Mo. banc 2009).

There is no question the trial court had the authority to award attorneys' fees to Class. The legislature statutorily authorized recovery of attorneys' fees in class actions brought under MMPA. Section 407.025.2.[4] Additionally, the settlement agreement provided for "reasonable attorneys' fees and expenses." While the trial court has discretion to award reasonable attorneys' fees, there are factors that may be considered to determine the amount of attorneys' fees to award. *Gilliland v. Missouri Athletic Club,* 273 S.W.3d 516, 523 (Mo. banc 2009). One consideration in determining the amount of attorneys' fees is the result achieved. *O'Brien v. B.L.C. Ins. Co.,* 768 S.W.2d 64, 71 (Mo. banc 1989); *see also Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Other relevant factors in determining the reasonable value and

amount of statutorily authorized fees include:

1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition.

*Hill,* 371 S.W.3d at 81–2.[5]

While an award of attorneys' fees should have some relationship to the award, "there is no established principle that the fee may not exceed the damages awarded." *O'Brien,* 768 S.W.2d at 71. When the legislature codifies fee-shifting awards for attorneys' fees in legislation that it promulgated to protect the public from harm, there is the possibility that the "amount of the verdict or judgment may have little bearing on the amount of attorneys' fees." *Gilliland,* 273 S.W.3d at 523 (discussing the award of attorneys' fees in a human rights action).

In this case, Class counsel were unsuccessful in moving the court to certify a nationwide class. Yet, even in spite of a vigorous defense by Volkswagen, Class counsel achieved a high degree of success for Class in Missouri. Class counsel engaged in litigation that would protect the class members from errors made by Volkswagen in the production of its vehicles. The trial court heard evidence regarding the time Class counsel spent on this case,

---

4. Section 407.025.2 provides, "In any action brought pursuant to this section, the court may in its ·discretion order, in addition to damages, injunction or other equitable relief and reasonable attorney's fees."

5. Missouri Lawyer's Weekly has compiled lists of billing rates in its August 6, 2012, publication and in its Third Annual Corporate Counsel Desk Book.

their hourly rates, and the expenses they incurred. The trial court considered the benefit conferred to the entire Class, the novel problem and skill required to litigate the case, the duration of the case (from filing though the anticipated lengthy trial), the experience, reputation, and ability of counsel, time required, and the paternalistic legislation that authorized attorneys' fees. The trial court found Class counsel's reasonable time spent on the case was 7,190 hours and their rates were reasonable. Accordingly, the trial court calculated the lodestar value to be $3,087,320. Given all of the factual findings made by the trial court and noting this was a complex class action litigation, this Court cannot say the value of the lodestar awarded was arbitrary, unreasonable, or an abuse of discretion.

### b. Multiplier

This Court must determine whether the application of the multiplier in this case was proper. This Court has not addressed under what circumstances in Missouri a multiplier could be used to enhance the lodestar amount. While recognizing the rationale in *Perdue* may provide useful guidelines for the initial determination by the trial court, this Court declines to adopt the use of those federal guidelines to modify long standing Missouri law.[6]

In this case, after determining the lodestar amount, the trial court listed seven additional factors in its findings of fact that it used to evaluate whether to apply a multiplier to the lodestar amount. The trial court considered:

(a) The nature of the defect involved was a novel problem;

(b) The skill requisite to prepare and try this case—which the parties estimated would take three weeks—was high;

(c) Taking this case precluded class counsel from accepting other employment that would have been less risky;

(d) The experience, reputation, and ability of [C]lass counsel is outstanding;

(e) The fee to be received by [C]lass counsel was always contingent, unlike the fees received by counsel for [Volkswagen];

(f) The time required by the demands of preparing this cause for trial delayed work on [C]lass counsel's other work; and

(g) Class counsel adduced evidence that the fee this Court believes is appropriate in this case is not disproportionately excessive in light of the potential benefit conferred on member of the class.

The trial court concluded that, considering the facts in this case, awarding a multiplier of 2.0 would be appropriate for a total reasonable attorneys' fee award of $6,174,640.

When a trial court must determine whether to apply a multiplier, it should avoid awarding a multiplier based upon facts that it considered in its initial determination of the lodestar amount. *See Perdue*, 130 S.Ct. at 1673. The trial court premised its use of the multiplier on a list of enumerated factors, some of which are duplicative of the factors utilized in its calculation of the lodestar amount. However, at least three of the seven factors directly support the application of a multiplier and demonstrate there was no abuse of discretion. The trial judge found "[t]he fee to be received by class counsel was

6. Other states have reached similar conclusions and have declined to follow *Perdue* in favor of retaining the trial court's traditional discretion to award attorney fees. *See Atherton v. Gopin*, 272 P.3d 700 (N.M.App.Ct. 2012); *Walker v. Giuffre*, 209 N.J. 124, 35 A.3d 1177 (N.J.2012).

always contingent, unlike the fees received by counsel for Defendant;" "[t]aking this case precluded class counsel from accepting other employment that would have been less risky" and "[t]he time required by the demands of preparing this cause for trial delayed work on class counsel's other work." These findings support a finding that a multiplier was necessary to ensure a market fee that compensated class counsel for taking this case in lieu of working less risky cases on an hourly basis.

■ The MMPA's fundamental purpose is the "protection of consumers," and, to promote that purpose, the act prohibits false, fraudulent or deceptive merchandising practices. *Huch v. Charter Communications, Inc.,* 290 S.W.3d 721, 724 (Mo. banc 2009); section 407.020. The MMPA is "paternalistic legislation designed to protect those that could not otherwise protect themselves." *Huch,* 290 S.W.3d at 725–26 (quoting *High Life Sales Co. v. Brown–Forman Corp.,* 823 S.W.2d 493, 498 (Mo. banc 1992) (citations omitted)). The legislature granted discretion to the trial court to award, "in addition to damages, injunction or other equitable relief and reasonable attorney's fees." Section 407.025. These remedial measures are designed not only to remedy violations of the MMPA, but also prospectively to deter prohibited conduct and protect Missouri citizens. *Scott v. Blue Springs Ford Sales, Inc.,* 176 S.W.3d 140, 143 (Mo. banc 2005). The trial court assessed Class counsel's impact to the outcome of the proceedings and determined there was specific evidence before the trial court, demonstrating that a multiplier would be appropriate. There was no abuse of discretion.

*Motion for Attorneys' Fees on Appeal*

Prior to submission of this case on appeal, Class filed a motion with this Court for attorneys' fees on appeal. This motion was taken with the case.

■ The legislature intended that in any action filed under the MMPA the trial court within its discretion may order an "injunction or other equitable relief and reasonable attorney's fees." Section 407.025.2. Clearly, this reflects the MMPA's objective of protecting consumers and serving as a deterrent to fraudulent and deceptive merchandising practices. *Huch,* 290 S.W.3d at 724. Accordingly, refusing to compensate an attorney for the time reasonably spent on appellate work defending the settlement below would be inconsistent with the intent of the legislature.

■ ■ While "appellate courts have the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Rosehill Gardens, Inc. v. Luttrell,* 67 S.W.3d 641, 648 (Mo.App. W.D.2002). Hence, on remand the trial court will need to determine the reasonableness of Class counsels' request for attorneys' fees on appeal.

*Conclusion*

The trial court's judgment as to the multiplier applied to the lodestar amount is affirmed. On remand, the trial court shall make specific findings, consistent with this opinion, to determine the appropriate amount of attorneys' fees on appeal and to enter judgment accordingly.

TEITELMAN, C.J., RUSSELL and FISCHER, JJ., concur; STITH, J., concurs in part and dissents in part in

separate opinion filed.
BRECKENRIDGE and WILSON, JJ.,
not participating.

LAURA DENVIR STITH, Judge.

I agree with the principal opinion insofar as it holds that the motion to dismiss the appeal filed by the class of Missouri plaintiffs ("Class") should be overruled. I also agree that class counsel are partially successful on appeal and that it is appropriate for the trial court to determine on remand the appropriate amount of attorneys' fees incurred on appeal.

I further agree with the principal opinion that the lodestar amount approved by the trial court was reasonable. The trial court's findings, however, do not indicate that in approving the lodestar amount it considered the factors this Court requires a trial court to consider in approving attorneys' fees. The findings and conclusion suggest that the trial court instead believed that once it approved the hours spent, it could simply presume the lodestar amount was reasonable and then consider the traditional factors used to determine the reasonableness of a fee in deciding whether to enhance the lodestar with a multiplier. If this is what the trial court did, it was an abuse of discretion.

Alternatively, if the trial court *sub silencio* considered the necessary factors in approving the lodestar, and then considered many of them a second time in approving the multiplier, as the principal opinion seems to presume, then this also was an abuse of discretion. The same factors should not have been considered twice.

The trial court also abused its discretion in expressly determining that it would not give any weight to the actual benefit to the class from the lawsuit. This, along with the factors the trial court did mention, was an important and necessary consideration in enhancing the lodestar with a multiplier.

The principal opinion errs in not requiring that actual benefit be one of the many considerations in determining whether to approve a multiplier.

Unlike the majority, I am unable to find any basis on this record to presume that, absent duplicate consideration of many factors and without consideration of other necessary factors such as actual benefit, the trial court would have adopted a multiplier of two. I therefore would remand for redetermination of the multiplier.

## I. FACTORS TO BE CONSIDERED IN DETERMINING LODESTAR.

The lodestar amount is the product of the hourly rates charged by class counsel multiplied by the total number of hours expended on the case. The record indicates that class counsel billed between $252 and $650 dollars per hour and class counsel's professional staff billed between $75 and $200 per hour. The total number of hours spent on the case, as determined by the trial court, was 7,190 hours. Multiplying the hourly rates by the time spent resulted in a total lodestar amount of $3,087,320.00. In addition, the class had expenses of $550,000. Actual recovery by the class was $125, 261.

In determining the lodestar amount the trial court must consider the reasonableness of the amount charged per hour and the reasonableness of the hours expended. As the principal opinion notes, while a trial court has discretion in determining reasonable attorneys' fees, this Court's cases require it to consider various factors in doing so, including the result achieved. Op. at 431. *See, e.g., Gilliland v. Missouri Athletic Club,* 273 S.W.3d 516, 523 (Mo. banc 2009); *O'Brien v. B.L.C. Ins. Co.,* 768 S.W.2d 64, 71 (Mo. banc 1989); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The principal opinion cites approvingly to the statement of addi-

tional factors in *Hill v. City of St. Louis*, 371 S.W.3d 66 (Mo.App.2012):

> Other relevant factors in determining the reasonable value and amount of statutorily authorized fees include:
>
>> 1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition.

*Hill, Id.* at 81–82.

Rule 4–1.5 of the Missouri Rules of Professional Conduct, adopted by this Court, sets out a more extensive list of factors to be considered in determining the reasonableness of a fee. Because this Court uses the Rule 4–1.5 standard to evaluate the reasonableness of a fee for disciplinary purposes, it is highly instructive:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

## A. The Trial Court Erred in Identifying Factors Relevant to Lodestar versus Factors Relevant to Multiplier.

The trial court was aware of these factors. Indeed, it largely tracked them. The problem is, the trial court did so not in determining whether the basic fee—the lodestar amount—was reasonable, but in determining to enhance that award by a multiplier of two. In so doing, the trial court abused its discretion.

The trial court's findings of fact and conclusions of law state very little about what it considered in approving the lodestar amount. He says in the statement of facts simply that it was a "hard-fought" case with a "vigorous defense" mounted by Volkswagen that was "matched by a vigorous prosecution by Plaintiffs' counsel;" that counsel spent 7,190 hours on this cause with a lodestar value of $3,087,320 and had expenses of $550,000; that the time incurred was reasonable in light of the vigorous defense; and that the rates charged were reasonable.

The trial court's findings explain its approval of the hours as reasonable in light of the vigorously pursued defense and prosecution of the case. They do not explain his approval of the fees per hour as reasonable. This leaves an appellate court to guess at what the trial court considered in determining the fees per hour to be reasonable.

If one presumes that the trial court did not consider the factors as stated by *Hill* or as set forth by this Court in Rule 4–1.5, this clearly would be an abuse of discretion. *See also, Gilliland*, 273 S.W.3d at 523 (identifying seven relevant factors, encompassing five identified in *Hill* as well as "nature and importance of subject matter" and "vigor of the opposition"). I do not believe that this experienced trial judge would have made this error.

One could presume as the principal opinion does that the trial court *sub silencio* considered the *Hill* factors in determining the lodestar and considered many of them a second time in determining the multiplier. As the principal opinion notes, it is error to consider the same factors twice, once in determining the lodestar and again in determining the multiplier (although for reasons not really explained, the principal opinion finds this did not affect the determination of the multiplier).

Alternatively, I believe it may be that the trial court simply believed that once it approved the hours, then it should start with the lodestar amount as presumptively reasonable and only consider the factors set out in the cases in determining whether to enhance it. This is, in fact, what it seems to say it did, saying, "The MMPA permits a court to award a prevailing party 'reasonable attorney fees.' Sec. 407.025.2. In doing so, the Court first looks at the lodestar amount."

If this is what the trial court did, it also was an abuse of discretion. The factors traditionally used by Missouri courts to evaluate the reasonableness of a fee must be used to determine the reasonableness of the lodestar before a court considers whether to enhance an award with a multiplier. In either failing to first consider whether the lodestar was reasonable, or alternatively in *sub silencio* considering many of the same factors both to approve the lodestar as reasonable and to approve a multiplier, the trial court abused its discretion.

This Court need not remand for the trial court to make a redetermination of whether the lodestar itself was reasonable, however. It can determine whether the lodestar was reasonable by examining those factors the trial court considered in approving the multiplier that overlap with those that Rule 4–1.5 indicates should have been considered in determining the reasonableness of the lodestar.

### B. Proper Calculation of Lodestar and Multiplier

I agree that in considering the factors as found by the trial court—albeit the trial court inappropriately considered them in determining the multiplier—and in considering what these factors show about the difficult nature of the case, the exceptional skill, reputation and ability of class counsel and the extent of services rendered, the lodestar amount is reasonable.[1]

1. As noted earlier, Rule 4–1.5 says that considerations in determining the reasonableness of a fee include:
   (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

   The trial court said that in determining that *a multiplier* of 2.0 was appropriate, it considered:
   (a) The nature of the defect involved was a novel problem; (b) The skill requisite to prepare and try this case—which the parties estimated would take three weeks—was necessarily high; (c) Taking this case precluded class counsel from accepting other employment that would have been less risky; (d) The experience, reputation, and ability of class counsel is outstanding; (e) The fee to be received by class counsel was always contingent, unlike the fees received by counsel for Defendant; (f) The time required by the demands of preparing this cause for trial delayed work on class counsel's other work; and (g) Class counsel adduced evidence that the fee this Court believes is appropriate in this case is not

As the trial court found, the time spent was reasonable in light of the "vigorous defense," the defective window regulators presented a novel issue and that the skill necessary to prepare and try such a case was necessarily high. By accepting this challenging case, in which recovery always was contingent, class counsel was precluded from accepting other less risky employment. Importantly, the trial court further found the experience, reputation and ability of class counsel to be outstanding.

The "fee customarily charged in the locality for similar legal services" is also a relevant consideration under Rule 4–1.5. Although the trial court did not mention it, a Kansas City attorney did testify that the fees charged were within the range charged by Kansas City counsel. A broader basis for determining the reasonableness of the $252 to $650 hourly fees charged by the Stueve firm can be had by reference to the published *Missouri Lawyers Weekly* yearly survey of billing rates across Missouri.

The August 6, 2012, survey states that the average billing rate in Missouri as a whole for 2012 was $339 per hour. Rates were higher in the state's largest cities, however: the average rate in St. Louis in 2012 was $383 per hour, and the average rate in Kansas City was $493. The survey noted the disparity between rates in St. Louis and Kansas City was "thanks in large part to [a particular national bankruptcy case and] ... Also aiding the Kansas City average was the high value Stueve Siegel Hanson attorneys set on their time in a contingency fee case." *Mo. Lawyers Weekly*, Aug. 6, 2012, at BR2. *See*

*also BR5* (Patrick Stueve rate of $650/hr is shown as highest in Kansas City; next highest rate is $575 in Kansas City, $500 in St. Louis.)

I do not disagree that in light of the contingency nature of the fee, the special difficulty presented by this litigation, and the other factors just noted, the exceptionally high hourly rates charged are justified in this case. My disagreement is in then considering these same factors to justify multiplying the rates by two. The rates already have been stretched to consider these factors in setting the lodestar. Those factors should not again be considered in setting the multiplier.

The principal opinion acknowledges that a trial court "should avoid awarding a multiplier based upon facts which it considered in its initial determination of the lodestar amount." Op. at 432. As the principal opinion notes, the multiplier is to be based on the existence of rare or exceptional circumstances justifying a greater than otherwise reasonable award.[2]

The principal opinion nonetheless defers to the trial court's discretion in explicitly considering in determining the multiplier factors that it should have considered only in determining the lodestar, because, it says, at least some of these factors may not overlap. But, as noted, it is impossible to determine what multiplier the trial court would have awarded if it had known that many of the factors—including two of the three identified by the principal opinion—were required to be considered in determining the lodestar, not the multiplier.[3] This alone requires remand.

---

disproportionately excessive in light of the potential benefit conferred on members of the class.

2. It is to avoid just such an inequity that the United States Supreme Court has held that multipliers should be limited to "rare" and

"exceptional" cases where the "lodestar fee would not have been adequate to attract competent counsel." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010) (citations omitted).

The only factor that the trial court identified in determining the multiplier that does not overlap with the factors that it should have taken into consideration in determining the lodestar amount was the potential benefit to the class. The trial judge said that in making the determination to allow a multiplier of two, "the Court believes that the reasonableness of the fees must be measured against the benefit conferred by the settlement rather than the actual amount paid out." It cited in support to *Van Gemert v. The Boeing Company*, 590 F.2d 433 (2d Cir.1978), *aff'd*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).

*Van Gemert* and similar cases do support considering the potential benefit of an award or settlement as a reason to approve a multiplier. *See e.g., Williams v. MGM–Pathe Commun. Co.*, 129 F.3d 1026 (9th Cir.1997) (reversing award based upon claimed Benefit Fund and awarding instead based upon amount of available Fund). Here, plaintiffs say, if every potential member of the class had made a claim for the maximum number of window replacements that plaintiffs' expert said might be required—6.5 window replacements per vehicle—then the potential benefit to the 22,304 class members would be $23,087,320. The trial court says it considered this to the exclusion of considering what actual benefit was conferred on the class.

Defendant says this was error and cites numerous cases stating that the award of a multiplier should be based on actual benefits paid (including *cy pres* awards) not potential benefit, as potential benefits are merely hypothetical. *See, e.g., Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 852–53 (5th Cir.1998) (affirming district court's award of attorneys' fees based strictly on actual claims). The trial expressly said it rejected these cases considering "the actual amount paid out"—here, only $125,261. This means that the actual monetary benefit to class members amounted to only 0.5% of the alleged "potential" benefit with a mere 0.6% claims rate. Neither was there any *cy pres* award here to make up for the small number of actual claimants.[4]

Further, defendant notes that the calculation of the potential benefit presumes that every one of the class members would experience 6.5 window regulator failures. But, this was not agreed to as part of the settlement; defendant continued to deny that any failures would occur. And, the only factual basis for determining the number of failures was the number of failures experienced by the tiny percentage of the class that did submit the grand total of 130 claims submitted by the deadline. These class members averaged only about 2 regulator failures per claim, not 6.5, thus cutting the potential value of the settlement by two-thirds if their experience was typical.

The tiny actual benefit to the class certainly would not justify an enhancement of the lodestar if considered alone, as defendant says was proper. The trial court's decision to consider only the potential

---

3. The three factors that the majority suggests are new are (1) because taking this case precluded counsel from taking other cases; (2) delayed work on other cases; and (3) because the resulting fee was contingent.

4. Other cases have considered factors such as the risk that a novel legal issue may preclude any recovery if determined against the class, and whether a *cy pres* award will be given in addition to compensation to the class. *See, e.g., Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 141 P.3d 824, 833–34 (Ariz.Ct.App.2006). These do not appear to be considerations here.

$23,087,320 that might have hypothetically been paid out rather than the $125,261 that was paid out necessarily was crucial to its determination to double the lodestar amount.

Neither the absolutist approach argued for by class counsel nor that argued for by defense counsel is consistent with Missouri law. The principal opinion itself notes that the result achieved must be considered even in determining the basic fee. Op. at 431. Further, Rule 4–1.5 states that a factor to consider is "the amount involved and the results obtained." Similarly, *Hill* states that a trial court determining a fee award should consider "the amount involved or the result obtained." 371 S.W.3d at 81–82. The result achieved cannot be considered without considering the actual benefit conferred.

As applied in the context of determining a multiplier, these principles mean it would make little sense to have a rule that permits consideration solely of the potential benefit to the exclusion of the actual benefit, or solely of the actual benefit to the exclusion of any potential benefit, when determining whether the result achieved justifies a multiplier.

Indeed, consideration only of potential benefit would create little incentive for class counsel to try to identify class members, and defense counsel certainly would not want a high claims rate, particularly if the value of the attorneys' fees is less than the value saved by having to compensate fewer claims. This creates perverse motivations that ultimately do not benefit the individuals who have been harmed.

On the other hand, a court should not base fee awards purely on the actual benefit conferred to the class. As the principal

opinion recognizes, the fundamental purpose of the Missouri Merchandising Practices Act ("MMPA") is the "protection of consumers" from false, fraudulent and deceptive merchandising practices. Class action lawsuits brought under the MMPA create a useful deterrent to this wrongdoing. There is some non-monetary value to this prevention. And if Missouri courts were to base fee decision awards solely on the actual benefit, plaintiff attorneys may no longer have the incentive to bring these claims, diminishing the deterrence value of the law. Further, defense counsel would have the perverse incentive of extending litigation unnecessarily, as class counsel claims occurred here, in order to make it difficult to identify class members and unprofitable for counsel to take the case if the multiplier is based on actual benefit only.[5]

Requiring trial courts to consider both the actual and potential benefit when setting a fee award maintains the incentive to bring class action claims while also ensuring that class attorneys are rewarded for devising settlements that achieve results that provide real benefits to the class.

Although the principal opinion notes that the result achieved is a consideration, it erroneously does not find error in the trial court's explicit determination that it did not have to consider actual benefit in determining the multiplier. This is what has led to the principal opinion's failure to require remand for a redetermination of the multiplier issue.

Because the trial court appeared to only have considered the potential benefits when it determined the lodestar and multiplier value, I would remand the case with the directive that the court take into con-

---

5. The court does not make any determination that any of these improper motivations or scenarios occurred here, it merely notes the potential dangers and that the method of determining fees should not encourage them.

sideration both the actual *and* potential benefit received by the class.

In requiring remand, I am not suggesting that no multiplier was appropriate. It may be that this is one of those rare and exceptional cases in which a multiplier is appropriate. The potential for recovery was large, even though smaller than claimed. Further, while the actual recovery was low, evidence was presented here that defense counsel unreasonably and unnecessarily extended the litigation, thereby increasing costs and attorneys' fees beyond what was reasonable and beyond what counsel could have anticipated in taking the case. It also is argued by class counsel that this very delay is what led to a smaller than anticipated claims rate, for many owners had quit driving their cars or lost their repair records by the time the settlement finally occurred. If proved,[6] these types of considerations appropriately may be considered in awarding a multiplier. *Perdue*, 130 S.Ct. at 1674 ("an enhancement may be appropriate where an attorney assumes [additional] costs in the face of unanticipated delay, particularly where the delay is unjustifiably caused by the defense"). I would hold only that the trial court considered inappropriate factors in determining that a multiplier was proper and its amount and that this Court, therefore should, remand for redetermination of the multiplier issue.

---

6. Whether these claims are supported by the record is a matter for the trial court.