Robert M. Clayton III, J., concurs.

Angela T. Quigless, J., concurs.

**Clay SELLECK, Appellant,**

v.

**KEITH M. EVANS INSURANCE, INC., Respondent.**

No. ED 105142

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

FILED: December 12, 2017

Shannon M. Rulo, 10803 Olive Blvd., St. Louis, MO 63141, for appellant.

Jason Husgen, 190 Carondelet Plaza, Suite 600, St. Louis, MO 63105, for respondent.

## KURT S. ODENWALD, Judge

### Introduction

Clay Selleck ("Selleck") appeals from the judgment of the trial court, entered after a jury awarded him $10,000 on his claim against Keith M. Evans Insurance, Inc. ("Evans Insurance") for violating the Missouri Merchandising Practices Act ("MMPA"). As authorized by the MMPA, the trial court then granted Selleck his reasonable attorneys' fees. In calculating Selleck's reasonable attorneys' fees, the trial court expressly considered the contingent-fee agreement executed by Selleck and his attorneys before awarding Selleck $3,333.33. In his sole point on appeal, Selleck asserts that the trial court erred in relying on the contingent-fee arrangement to determine his reasonable attorneys' fees. While the presence of a pre-existing contingent-fee agreement may aid a trial court in determining the reasonableness of a statutory award of attorneys' fees, a contingent-fee contract does not impose an automatic ceiling on an award of attorneys' fees.

The judgment of the trial court appears to treat the contingent-fee agreement as a mandatory cap on the amount of attorneys' fees that may be awarded under the MMPA instead of utilizing the contingent fee-agreement as one factor to determine the reasonableness of an attorneys' fee award. Accordingly, we reverse the judgment of the trial court and remand with instructions to determine Selleck's reasonable attorneys' fees for his claim under the MMPA.

### Factual and Procedural History

After the termination of his employment, Selleck sued his former employer, Evans Insurance. In four separate counts, Selleck alleged claims for (1) wrongful discharge, (2) unpaid commissions under Section 407.913 [1] of the MMPA, (3) unjust enrichment, and (4) breach of an oral contract. In Count I, Selleck averred that Evans Insurance wrongfully discharged him because he reported unlawful activity to his supervisors. Selleck further contended that Evans Insurance's purported reason for his termination—Selleck's negligent job performance—was "a pretext to mask [Evans Insurance's] retaliatory conduct." Claiming extensive damages, Selleck sought recovery under his wrongful-discharge claim for unpaid rent, unpaid child support, fees incurred in a modification suit with his former wife, emotional distress, lost wages, and punitive damages. In Count II, Selleck maintained that Evans Insurance failed to pay Selleck his earned commissions, estimated then at around $3,000, in violation of the MMPA. In Counts III and IV, Selleck alleged unjust enrichment and breach of an oral contract, demanding damages for unpaid wages, vacation pay, unpaid commissions, and punitive damages.

From the onset, the ensuing litigation was contentious and combative. The parties' attorneys immediately and intensely disputed both the scope and the procedure of discovery. Unable to amicably conduct discovery, the parties' attorneys required the trial court to intervene in numerous discovery disputes, Selleck's attorney unsuccessfully and repeatedly sought sanctions against opposing counsel for purported discovery violations. Both parties' attorneys levied allegations that the opposing counsel engaged in professional misconduct and committed ethical viola-

---

1. All statutory references are to RSMo (Cum. Supp. 2013).

tions. The antagonistic litigation resulted in an unsuccessful attempt by Evans Insurance to remove Selleck's attorney from the proceedings.

The bitterly contested suit proceeded to a jury trial. At trial, Selleck testified regarding his past work history, his job performance with Evans Insurance, his post-termination employment, and the commission-payment system implemented by Evans Insurance. Selleck testified that he suffered extensive damages as a result of the wrongful discharge and asked for an award of over $160,000. Selleck explained at length his financial struggles following his termination. Selleck also requested the jury to award him $11,709 in unpaid commissions, statutory penalties, and accrued interest. Regarding his attorneys' fees, Selleck testified that he had hired his attorneys on a contingent-fee arrangement. After presenting evidence, Selleck voluntarily withdrew his claims for unjust enrichment and breach of an oral contract and submitted his claims for wrongful discharge and for unpaid commissions to the jury. The jury found against Selleck on his wrongful-discharge claim and found in favor of Selleck on his unpaid-commissions claim, awarding Selleck $10,000.

Pursuant to Section 407.913, Selleck filed a post-trial motion for his reasonable attorneys' fees. Selleck requested a total fee award of $221,292. Selleck represented that this amount reflected the 788 hours billed on the case by attorneys who charged $280 and $450 an hour, respectively. Evans Insurance objected to many of the entries on the legal bill, stating that many of the charges did not relate to Selleck's modest MMPA claim; instead, the charges pertained to his unsuccessful claims for wrongful discharge, unjust enrichment, and breach of an oral contract.

The trial court ruled that Selleck was entitled to his reasonable attorneys' fees. According to the trial court, the amount of attorneys' fees sought by Selleck, however, was "neither reasonable nor [was] it supported by the evidence based upon extremely excessive hours requested for the type of case involved[.]" The trial court continued: "[T]he fees requested by [Selleck] were extremely excessive for work on a case that was brought over the alleged non-payment of $4,200.00 in commissions. ... [B]y far, most of the fees in the case arose because of discovery and trial preparation for [Selleck's] unsuccessful claim" for wrongful discharge.

The trial court found that Selleck presented credible evidence that he had entered into a contingent-fee arrangement with his attorneys. The trial court determined that Selleck "had paid no attorney's fees in this case" and that Selleck had not "incurred" any attorneys' fees until the $10,000 jury award in his favor. Considering contingency agreements, the trial court ruled that 33 1/3% was a reasonable and standard contingent-fee percentage in the local legal community. Regarding the merits of the suit, the trial court explained that this was "a simple commissions case for a rather moderate amount" and that the amount Selleck requested was "extremely excessive" for an unpaid-commissions case. The trial court acknowledged that a high-degree of skill was required to conduct a jury trial, that unpaid commissions were an important subject matter, and that the case was vigorously litigated. However, the trial court also found that Selleck's attorneys experienced limited success, prevailing on only one of Selleck's four claims. The trial court emphasized the dissimilarity of Selleck's claims, which required the trial court to separate the MMPA claim from the unsuccessful wrongful-discharge claim. Recognizing that the jury awarded Selleck $10,000 on his MMPA claim, the trial court granted Selleck $3,333.33 in attorneys' fees and $2,789.45 in costs.

Alternatively, the trial court then computed the reasonable amount of attorneys' fees had Selleck not entered into a contingent-fee agreement and had employed his attorneys at an hourly rate. Specifically, the trial court stated that, had the attorneys' fees been calculated based on an hourly rate, "the Court would have found a fee based upon 25 hours for pleading preparation, discovery, and arguments on motions, 20 hours for final trial preparation, and 40 hours for the actual jury trial would be reasonable." The trial court noted that 85 hours at the hourly rate of $280 would amount to $23,800, but repeated its decision not to award attorneys' fees based upon an hourly basis.

Selleck moved for reconsideration of his attorneys' fees award. In his motion, Selleck asserted that Missouri law did not support reducing an attorneys' fee award based upon a contingent-fee agreement. Further, Selleck argued that the trial court erred in its alternative finding that, of the 788 hours claimed, no more than 85 hours were reasonably expended under the circumstances.

The trial court denied Selleck's motion for reconsideration. This appeal—relating solely to the issue of attorneys' fees—follows. Selleck requests this Court to grant his reasonable attorneys' fees on appeal.[2]

## Point on Appeal

In his sole point on appeal, Selleck asserts that the trial court abused its discretion by utilizing Selleck's contingent-fee arrangement with his attorneys to determine the award of his attorneys' fees.

2. On remand, we direct the trial court to consider Selleck's request for his reasonable

## Discussion

### I. Standard of Review

We review the trial court's award of attorneys' fees for an abuse of discretion. Berry v. Volkswagen Grp. of Am., Inc., 397 S.W.3d 425, 430 (Mo. banc 2013). To demonstrate that the trial court abused its discretion, "the complaining party must show that the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." Id. at 431 (quoting Western Blue Print Co. v. Roberts, 367 S.W.3d 7, 23 (Mo, banc 2012)). Accordingly, an award of attorneys' fees "shall not be reversed unless the amount awarded is arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration." Alhalabi v. Mo. Dep't of Nat. Res., 300 S.W.3d 518, 530 (Mo. App. E.D. 2009). The award of attorneys' fees is within the trial court's discretion because the trial judge, "by virtue of his or her office and experience, is considered an expert in determining the proper amount of compensation for legal services." McPherson Redevelopment Corp. v. Shelton, 807 S.W.2d 203, 207 (Mo. App. E.D. 1991). Finally, the award of attorneys' fees is presumed correct, and the complaining party bears the burden to prove an abuse of discretion. Scott v. Blue Springs Ford Sales, Inc., 215 S.W.3d 145, 170 (Mo. App. W.D. 2006) (overruled in part on other grounds in Badahman v. Catering St. Louis, 395 S.W.3d 29, 40 (Mo. banc 2013)).

### II. The Trial Court's Consideration of the Contingent-Fee Arrangement

At trial, Selleck prevailed on his unpaid-commissions claim. Selleck then sought his

attorneys' fees on appeal.

reasonable attorneys' fees pursuant to Section 407.913 of the MMPA.

■ "Missouri courts adhere to the 'American Rule' which states that, ordinarily, litigants must bear the expense of their own attorney's fees." Arcese v. Daniel Schmitt & Co., 504 S.W.3d 772, 787 (Mo. App. E.D. 2016) (quoting Lett v. City of St. Louis, 24 S.W.3d 157, 162 (Mo. App. E.D. 2000)). One common exception to the American Rule is where a statute authorizes a trial court to award attorneys' fees. Williams v. Fin. Plaza, Inc., 78 S.W.3d 175, 184 (Mo. App. W.D. 2002). At issue here is the MMPA,[3] which, *inter alia*, authorizes a trial court to award the prevailing party, in a suit recovering unpaid sales commissions, his or her attorneys' fees. See, e.g., Section 407.913. By its plain language, Section 407.913 states that a trial court *"may award reasonable attorney's fees* and costs to the prevailing party." (emphasis added).

The core of the present dispute between the parties is the method used by the trial court to calculate Selleck's reasonable attorneys' fees. Selleck maintains that the trial court must first multiply the hourly rate customarily charged for the attorneys' services by the reasonable hours the attorneys expended in the litigation. Selleck further contends that the trial court cannot consider or use Selleck's contingent-fee arrangement with his attorneys to determine the reasonableness the award of attorneys' fees. Evans Insurance counters that the trial court need not accept Selleck's suggested approach or calculations and that the trial court possesses broad discretion to consider any fee structure in awarding Selleck his reasonable attorneys' fees.

■ We first address the statute authorizing the recovery of attorneys' fees, here Section 407.913. Unlike other sections of MMPA, attorneys' fees awarded pursuant to Section 407.913 are not expressly tied to the amount of time expended by the attorneys. Compare Section 407.913 (authorizing the trial court to "award reasonable attorney's fees") with Section 407.025.1 (stating that the trial court may award "attorney's fees[ ] based on the amount of time reasonably expended"). Under Section 407.913, the legislature tasked trial courts with awarding reasonable attorneys' fees and did not directly fix the award to the time actually spent by attorneys working on the case. See Section 407.913. We presume that the legislature acts with knowledge of statutes involving similar or related subject matters and that it acts intentionally when it includes language in one section but omits such language from another. Jantz v. Brewer, 30 S.W.3d 915, 918 (Mo. App. S.D. 2000); Allen v. Pub. Water Supply Dist. No. 5, 7 S.W.3d 537, 540 (Mo. App. E.D. 1999). The statute identifies no specific factors that the trial court must incorporate in, or omit from, its deliberation in awarding attorneys' fees. Accordingly, the statute does not preclude the trial court from considering the nature of the fee agreement entered into between plaintiff and counsel, and leaves the trial court to weigh the reasonableness of the petitioners' request for attorneys' fees.

■ However, the trial court must begin its evaluation by first determining the "lodestar" amount by multiplying the

**3.** Sections 407.911-915 are the provisions of the MMPA relating to the obligation for, and the payment of, sales commissions. Lapponese v. Carts of Colo., Inc., 422 S.W.3d 396, 401 (Mo. App. E.D. 2013). These provisions have also been referred to as the "Missouri Sales Commission Statutes" or the "Missouri Sale Representative Act." See, e.g., Rois v. H.C. Sharp Co., 203 S.W.3d 761, 763 (Mo. App. E.D. 2006); J.S. DeWeese Co. v. Hughes-Treitler Mfg. Corp., 881 S.W.2d 638, 642 (Mo. App. E.D. 1994). These "Sales Commission Statutes" ensure the timely payment of sales commissions earned by a sales representative under a contract with a principal. Lapponese, 422 S.W.3d at 401.

number of hours reasonably expended by a reasonable hourly rate. Alhalabi, 300 S.W.3d at 530 n.6. Trial courts, as experts in evaluating the provided legal services, have broad discretion in calculating the "lodestar" amount pursuant to Section 407.913. See Lapponese, 422 S.W.3d at 406. This discretion is not unfettered, and the trial court must carefully scrutinize the individual circumstances presented in each claim. See id. Guiding this careful consideration, the Supreme Court of Missouri has identified a series of factors that a trial court may consider in determining the reasonable value and amount of statutorily authorized fees. Berry, 397 S.W.3d at 431. In Berry, the Supreme Court reviewed a trial court's award of attorneys' fees under Section 407.025.2 of the MMPA. Id. at 428. The Berry court announced that "[w]hile the trial court has discretion to award reasonable attorneys' fees, there are factors that *may* be considered to determine the amount of attorneys' fees to award." Id. at 431 (emphasis added). The Berry court continued:

> Other relevant factors in determining the reasonable value and amount of statutorily authorized fees include: 1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition.

Id. (internal citations omitted). The Berry court thus provided a list of factors that the trial court may consider and utilize in evaluating the reasonableness of statutori-

ly authorized attorneys' fees. Id.; see also Lapponese, 422 S.W.3d at 406 (listing the same factors for awarding attorneys' fees under Section 407.913). Importantly, however, the Berry court did not limit the trial court's consideration to only these factors. The Berry opinion, by its plain language, does not preclude a trial court from considering factors outside the enumerated list. Missouri law does not explicitly prohibit a trial court from considering a contingent-fee contract when fashioning an award for reasonable attorneys' fees. See Zweig v. Metro. St. Louis Sewer Dist., 412 S.W.3d 223, 249-50 (Mo. banc 2013) (addressing a contingent-fee arrangement in deciding whether the trial court erred in adjusting its award of attorneys' fees); cf. Rule 4-1.5 [4] (stating that, under the rules of professional conduct, a lawyer may not charge an unreasonable fee, and a factor in determining the reasonableness of the fee is "whether the fee is fixed or contingent.").

Selleck cites Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), for the proposition that a trial court, when awarding attorneys' fees under Section 407.913, cannot limit said award based on the presence of a contingent-fee arrangement. In Blanchard, the plaintiff requested attorneys' fees pursuant to the federal civil rights statute, 42 U.S.C. § 1988. Id. at 88, 109 S.Ct. 939. The Blanchard Court explained, "The [ ] contingency-fee factor is simply that, a factor. The presence of a pre-existing fee agreement *may* aid in determining reasonableness. ... But as we see it, a contingent-fee contract does not impose an *automatic* ceiling on an award of attorney's fees[.]" Id. at 93, 109 S.Ct. 939 (emphasis added). Contrary to Selleck's arguments, Blanch-

4. All rule references are to the Missouri Supreme Court Rules (2016). While not binding here, Missouri courts can look to the disciplinary rules for guidance. See Klinkerfuss v. Cronin, 289 S.W.3d 607, 615-16 (Mo. App. E.D. 2009).

ard supports the position that the trial court has the discretion to view a contingent-fee agreement as a factor in awarding attorneys' fees.

The conundrum before us is how the trial court used the contingent-fee arrangement between Selleck and his attorneys when determining the reasonableness of Selleck's attorneys' fees. The words and tenor of trial court's judgment suggest that the contingent-fee arrangement may have been the sole factor in the trial court's decision, and not merely a factor. As cautioned by the Blanchard court, the presence of a pre-existing fee arrangement may aid in determining the reasonableness of attorneys' fees, but may not be viewed as an absolute ceiling for any such award. Blanchard, 489 U.S. at 92, 109 S.Ct. 939.

As previously noted, a trial court must begin its evaluation of attorneys' fees by determining the "lodestar" amount. Alhalabi, 300 S.W.3d at 530 n.6. Absent express statutory direction otherwise, the trial court must establish the rates customarily charged by the attorneys involved and by other attorneys in the community for similar services. Williams, 78 S.W.3d at 184; O'Brien v. B.L.C. Ins., Co., 768 S.W.2d 64, 71 (Mo. banc 1989). Trial courts are under no obligation to accept the amount or rate of attorneys' fees suggested by the parties. Winghaven Residential Owners Ass'n v. Bridges, 457 S.W.3d 383, 386 (Mo. App. E.D. 2015); Williams v. Trans States Airlines, Inc., 281 S.W.3d 854, 879-80 (Mo. App. E.D. 2009). Indeed, even a significant difference between the amount or rates of attorneys' fees awarded and the amount or rates requested does not, standing alone, prove an abuse of the trial court's sound discretion. Winghaven Residential Owners Ass'n, 457 S.W.3d at 386.

Despite the broad discretion that resides in the trial court to determine the reasonableness of attorneys' fees in light of the facts presented in the case before it, we reject the proposition that this broad discretion allowed the trial court to base an award of attorneys' fees *solely* upon the existence of a pre-existing contingent-fee agreement. Our review of the trial court's judgment and award of attorneys' fees suggests that it may have abused its considerable discretion by viewing the continent-fee agreement between Selleck and his legal counsel as an absolute cap on attorneys' fees, thereby undermining any further review the trial court gave to the individual circumstances of the trial before it. The judgment and findings of the trial court following jury trial make numerous repeated references to the contingent-fee agreement, Notably, the judgment expressly disregarded the lodestar factors of the hours expended on the litigation and the rate customarily charged by other attorneys in the community as irrelevant after finding the 33 1/3% contingent fee to be reasonable.

Although the trial court's judgment references "other factors" considered when determining the reasonableness of the attorneys' fees requested by Selleck on his prevailing count, the trial court plainly rejected certain factors because of the contingent-fee agreement and seems to have minimized the relevance of the remaining factors given its ultimate finding that "plaintiff was not charged fees on an hourly basis … and his testimony was that he had a contingent fee agreement with counsel." The presence of the contingent-fee agreement appears to undercut the other factors mentioned in the trial court's judgment and findings. It may be that the trial court indeed analyzed the contingent-fee agreement as merely one of many factors, and not the sole factor, for determining the reasonableness of Selleck's motion for attorneys' fees. However, the written judgment, when viewed in its entirety, presents

787

a limited rather than broad consideration of the contingent-fee agreement.[5]

 Selleck's argument that a trial court is limited to calculating an award of attorneys' fees by determining the lodestar amount and may not consider a pre-existing contingent-fee erroneously states the law and ignores the express language of Blanchard. This approach also improperly deviates from Missouri's long-standing discretionary approach to determining and awarding attorneys' fees, demanding instead a rigid, strict computation tied to the counsel's hourly rate, regardless of the nature, type, and facts of each individual case. Although the trial court was not permitted to base its award of attorneys' fees solely upon Selleck's contingent-fee arrangement with his attorneys, an award based on a percentage of the recovery is not, as Selleck suggests, *per se* unreasonable. The appropriateness of such an award is dependent upon the circumstances presented before the trial court. Cf. Dominion Home Owners Ass'n v. Martin, 953 S.W.2d 178, 182-83 (Mo. App. W.D. 1997) (rejecting the defendants' arguments that the plaintiff was *necessarily* limited to a lower recovery of attorneys' fees because of plaintiff's contingent-fee agreement with its attorneys).

Sufficient evidence exists that the trial court treated Selleck's contingent-fee agreement as an absolute ceiling on any award of attorneys' fees. Accordingly, we hold that the judgment awarding attorneys' fees is so illogical as to constitute an abuse of the trial court's broad discretion. Point granted.

### Conclusion

The judgment of the trial court is reversed. The judgment is remanded to the trial court to determine the reasonableness of Selleck's attorneys' fees. More specifically, the trial court is instructed to follow the mandate of Blanchard by considering whether an adjustment to the trial court's lodestar calculation of $23,800 is reasonable given all pertinent factors, including the contingent-fee agreement between Selleck and his legal counsel.

Robert G. Dowd, Jr., P.J., concurs.

Sherri B. Sullivan, J., concurs.

5. In its judgment the trial court presented an alternative calculation of attorneys' fees for the MMPA claim based upon the lodestar amount of the number of hours reasonably expended by a reasonable hourly rate. This alternative calculation is based solely on the lodestar calculation, and does not include any adjustment that may be reasonable given Selleck's contingent-fee arrangement. What the trial court presented in its judgment was an "either-or" choice, each of which appears to diverge from Blanchard, which expressly allows consideration of a contingent-fee contract after the lodestar has been determined.