William TAYLOR, Appellant,

v.

ZOLTEK COMPANIES, INC.,
et al., Respondents.

No. ED 76131.

Missouri Court of Appeals,
Eastern District,
Division One.

May 23, 2000.

Steven E. Dyer, St. Louis, for appellant.

Gerald M. Dunne, Richard B. Hein, Kodner Watkins, Muchnick & Dunne, L.C., St. Louis, for respondent.

PAUL J. SIMON, Judge.

William Taylor, appellant, appeals the trial court's judgment granting respondents', Zoltek Companies, Inc. (Zoltek) and Zsolt Rumy (Rumy), motion for summary judgment on appellant's claims for breach of contract, tortious interference, and punitive damages.

On appeal, appellant contends that the trial court erred in sustaining respondents' motion for summary judgment because he presented material facts in dispute regarding: (1) Zoltek's anticipatory breach of appellant's long term incentive plan, thereby satisfying his burden to defeat Zoltek's and Rumy's motion for summary judgment.; and (2) Zolt Rumy's tortious interference with appellant's long term incentive plan, thereby satisfying his burden to defeat Zoltek's and Rumy's motion for summary judgment. We affirm.

Appellate review of a summary judgment is de novo. *ITT Commercial Finance Corp., et al. v. Mid–America Marine Supply*, 854 S.W.2d 371, 376 (Mo.banc 1993). The record is viewed in the light most favorable to the non-moving party, according that party all reasonable inferences that may be drawn from the record. *Id.* Facts set forth by affidavit or otherwise in support of a party's motion are taken as true, unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* at 376.

Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. A defending party may establish a right to judgment by showing (1) facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 380.

The non-movant must show by affidavit, depositions, answer to interrogatories, or admissions on file, that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed. *Id.* A "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *Id.* at 382. A "genuine issue" is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.*

The record reveals that appellant began working for Zoltek in May 1978 as a salesperson. Over the years, he progressed steadily within the company and in 1991 Rumy, Chairman of the Board, President and Chief Executive Officer of Zoltek, promoted him to Vice President of the company's Equipment and Services Division, also known as ESBU. Appellant did not have an employment contract. On August 31, 1992, appellant and Zoltek entered into a Non–Qualified Stock Option Agreement (Agreement), which incorporated by reference Zoltek's Long Term Incentive Plan (Plan). The Agreement granted appellant the right to participate in Zoltek's Plan. Rumy and appellant signed the Agreement.

The preamble to the Agreement provides:

WHEREAS, [appellant] is now an officer or key employee of Zoltek, and Zoltek considers it desirable and in its best interest to give [appellant] an inducement to acquire a proprietary interest in Zoltek and thus to promote the future growth, development and continued success of Zoltek.

Paragraph 1 of the Agreement grants appellant the option to purchase a maximum of 50,000 shares of $.01 par value Common Stock in Zoltek at a price of $4.00 per share. Paragraph 2 provides that the term of the option lasts ten years, ending on August 31, 2002. Paragraph 3, governing the time of exercise of the option, provides:

This option shall become exercisable as to one-third of the total shares specified in Paragraph 1 hereof on the first anniversary of the date of grant, and thereafter as to the next one-third of the total shares specified in Paragraph 1 hereof on the second anniversary of the date of grant, and as to the remaining one-third of the total shares specified in Paragraph 1 hereof on the third anniversary of the date of grant, which amounts shall accumulate from .year to year for the full term hereof to the extent not previously exercised, *so long as [appellant] shall continue to be employed by Zoltek as of such dates.* (emphasis added).

Section 16 of the Plan, entitled No Right to Employment, provides:

A Participant's right, if any, to continue to serve the Company and its subsidiaries as an officer, employee, or otherwise, shall not be enlarged or otherwise affected by his or her designation as a Participant under the Plan.

Section 17, entitled Duration, Amendment and Termination, provides in pertinent part:

... The Board of Directors may amend the Plan from time to time or terminate the Plan at any time. However, no action authorized by this paragraph shall reduce the amount of any existing Award or change the terms and conditions thereof without the Participant's consent...

While appellant included sections 15, 16, 17, 18, and 19 of the Plan in support of his reply to the motion for summary judgment, the full text of the Plan has not been made part of the record.

In October of 1994, appellant received a written "performance appraisal" from Rumy, which states in pertinent part:

...as a result I have decided the company cannot afford to let you continue in your current position without demonstrating a significant change in your attitude and approach. It is my decision that you will not be considered for the position of general manager for the ESBU for a long time, if ever. I feel it is the best for all concerned that you relocate to the McKelvey office on special assignment until you and I can come to terms of how or if you can handle the sales management of the ESBU.

On December 27, 1994, Rumy sent appellant an "Inter–Office Memo" (Memo) which states that he "decided that it is not in the Company' best interest to have [appellant] return to the ESBU in any management position." It further states that the "decision is final and it leaves few options for [appellant's] continued employment with Zoltek" and that "none of these options will offer the same salary or the continued participation in the incentive stock option plan." The options were as follows:

*Option 1:* If you wish to stay with Zoltek, I can offer you an interim assignment in the open territory that you have been covering until we can find a suitable outside salesman to take the territory or we find a general manager for the ESBU. After that time you would be assigned to the Flexigraf national sales position, reporting to the Sales Manager of the CFBU. This position would have a maximum salary of $50,000 and would not have a company car. Once the assignment is defined, we could design an incentive bonus plan similar to the ESBU sales territory.

\* \* \*

If you elect this option, you will also forfeit the last third of your stock options. You will have to sign an agreement to this effect. On the positive side, the 33,333 shares you would still have would not have to be exercised immediately.

*Option 2:* If you elect to terminate your employment at this time, you will depart with a significant amount of money. You will have to sign the enclosed agreement, which is identical to the one John Huesman had to sign, and exercise the 33,333 share option within three months

as the Incentive Stock Option Plan calls for.

The Memo asked appellant to make a decision as to which option he would elect by the end of the week.

Appellant discussed the Memo with Rumy sometime during the first week of January 1995. During the discussion, appellant stated that Option 2 was unacceptable to him and that though it was a tremendous burden on him, he would accept demotion, the $50,000 salary and the loss of the company car, but that he could not accept losing one-third of his stock options. Rumy replied that appellant's decision was not acceptable. Appellant asked Rumy "well, I guess that's the end of our relationship or I guess I'm fired." Rumy replied, "Well, I guess you are." Thereafter, appellant's relationship with Zoltek was severed and his employment terminated. However, appellant exercised his option and purchased 5,500 shares on January 19, 1995, and 27,833 shares on January 25, 1995, for a total of 33,333 shares, two-thirds of the maximum 50,000 shares.

On September 29, 1998, appellant filed his second amended petition, which he amended by interlineation on March 4, 1999. In Count I of his petition, breach of contract, plaintiff alleged that Zoltek repudiated and breached the terms of the Agreement and "On December 27, 1994, when Rumy, acting in his managerial capacity as Chairman, President and Chief Executive Officer of Zoltek ..." "demanded in writing that [appellant] select one of two alternatives ..." concerning his employment, "both of which expressly terminated his rights under the long term incentive plan with respect to the final one-third of his stock option shares." In Count II of his petition, appellant alleged a claim against Rumy for Tortious Interference with his contract and Count III set forth his claim against Zoltek for punitive damages.

On October 23, 1998, respondents filed their answers essentially denying appellant's allegations and raised affirmative defenses, including the doctrine of impossibility inasmuch as appellant never exercised his option to purchase the remaining shares, a business justification for termination of appellant's employment, and failure to state a cause of action.

On February 22, 1999, respondents filed a joint motion for summary judgment supported by a memorandum, Rumy's affidavit, and exhibits, including copies of the Agreement, appellant's deposition and petition. On March 3, 1999, appellant filed his reply supported by a memorandum, his affidavit, and various exhibits, including portions of the deposition of James Betts, a member of Zoltek's Board of Directors, the Agreement, section 15 through 19 of the Plan, Rumy's Memo and the petition. On March 25, 1999, the trial court granted respondents' motion without making written findings of fact and conclusions of law and entered judgment in their favor on all counts. Appellant appeals the judgments on his claims for breach of contract against Zoltek and for tortious interference against Rumy, but not the judgment on his claim for punitive damages against Rumy.

In his first point, appellant contends that the trial court erred in granting respondents' motion for summary judgment because he presented material facts in dispute regarding Zoltek's anticipatory breach of the Agreement thereby satisfying his burden to defeat respondents' motion for summary judgment. However, his argument is directed to the application of the law to the facts. Our review of the motion for summary judgment and appellant's reply to the motion reveals that there are no genuine issues of material fact. In his reply to the motion for summary judgment and argument on appeal, appellant essentially contends that Rumy's Memo constituted an anticipatory breach of the Agreement, which is a question of law rather than fact. Therefore, his point has preserved nothing for our review. Rule 84.04. However, in the interest of resolving this matter on the merits, we will address plaintiff's argument.

Appellant's argument is directed to the first option set forth in Rumy's Memo, which allegedly affected his right to participate in the Plan. Appellant argues that, pursuant to paragraph 3 of the Agreement, he is entitled to participate in the Plan, so long as he remains an employee of Zoltek and that the first option constituted an anticipatory breach because it indicated Zoltek's intention to terminate his participation in the Plan, even though he would be an employee of the company. He further argues that by terminating his participation in the Plan, Zoltek altered the terms of the plan, which, he contends can only be done by the approval of Board of Directors or with appellant's consent, neither of which has occurred.

Appellant, who did not have an employment contract, was an employee at will and in accordance with section 16 of the Plan, appellant's employment relationship was not affected by his designation as a participant in the Plan. Therefore, Zoltek had the right to demote or terminate appellant with or without cause. *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 663 (Mo.banc 1988). Rumy, as Chairman of the Board, President and Chief Executive Officer of Zoltek, clearly had the authority to promote appellant to Vice President of the ESBU and to sign the Agreement on behalf of Zoltek granting appellant's participation in Plan. Likewise, his authority to demote or terminate appellant for cause or no cause is not disputed.

Although the Memo indicated that as a condition of remaining an employee, appellant would have to forfeit his right under the Agreement to participate in Zoltek's Plan, it did not alter or amend the terms of the Plan. The Memo was directed to appellant's job performance and his status as Vice President of the ESBU. It clearly expressed Rumy's dissatisfaction with appellant's performance and his intent to remove him as Vice President of ESBU. Because Zoltek, through its Chairman of the Board, President and Chief Executive Officer, Rumy, was exercising its rights as an employer in the employment relationship, the Memo did not alter the terms of the Plan. Further, since there was no dispute as to Zoltek's right to demote or terminate appellant, there was no breach of the Agreement. Point denied.

In his second point, appellant contends that the trial court erred in sustaining respondents' motion for summary judgment because he presented material facts in dispute regarding Zolt Rumy's tortious interference with his Plan, thereby satisfying his burden to defeat Rumy's motion for summary judgment. Specifically, appellant contends that he has offered sufficient evidence to prove the absence of justification by alleging that Rumy employed improper means in terminating appellant's participation in the Plan. He contends that he properly alleged and stated that: 1) Rumy threatened him in the Memo whereby Rumy told appellant that he had to either forfeit the last one-third of his stock options under the Plan or be fired; 2) Rumy was not justified and had no legal right to unilaterally terminate appellant's Plan because Rumy never received approval from Zoltek's board of directors or from appellant; and 3) Rumy used false and misleading statements regarding appellant's business skills and abilities to justify terminating appellant's participation in the Plan.

However, our review of the motion for summary judgment and appellant's reply to the motion does not indicate genuine issues of material fact. Additionally, our review of appellant's brief reveals that he did not raise a factual dispute, but essentially argues the application of the law to the facts. The thrust of his argument is directed to his contention that Rumy threatened appellant, that he was not justified and had no a legal right to terminate appellant's participation in the Plan and that he made false and misleading statements to justify terminating appellant's participation. Therefore, appellant has not preserved his point for review.

Rule 84.04. However, in the interest of resolving the matter on its merits, we will address his argument.

A claim for tortious interference with a contract or business relationship requires proof of each of the following:

(1) A contract or valid business relationship or expectancy;

(2) Defendant's knowledge of the contract or relationship;

(3) Intentional interference by the defendant inducing or causing a breach of the contract or relationship;

(4) The absence of justification;

(5) Damages resulting from defendant's conduct.

*Community Title Co. v. Roosevelt Federal Sav. And Loan Ass'n*, 796 S.W.2d 369, 372 (Mo.banc 1990). Appellant has the burden of producing substantial evidence to establish the absence of justification. *Id.* "The absence of justification" is defined as "the absence of any legal right to take the actions complained of." *Eggleston v. Phillips*, 838 S.W.2d 80, 83 (Mo.App. E.D. 1992). A person is justified in interfering with a contract or expectancy if he or she has a legal right to do so. *Id.* Rumy as the Chairman of the Board, President and Chief Executive Officer of Zoltek is empowered to transact, without special authorization from the board of directors, all acts of an ordinary nature which are incidental to his office by usage or necessity and to thus bind the corporation. *Holtmeier v. Dayani*, 862 S.W.2d 391 (Mo.App. E.D.1993).

Rumy, as Chairman of the Board, President and Chief Executive Officer, had an interest in appellant's job performance and his Memo was clearly directed to appellant's performance as Vice President of ESBU. Further, as Chairman of the Board, President and Chief Executive Officer, Rumy had the authority and legal right to demote or terminate appellant as Vice President of ESBU with or without cause and was therefore justified in doing so. *Johnson*, 745 S.W.2d at 663 (Mo.banc 1988). Thus, there is no absence of justification and appellant's claim falls short. Point denied.

JUDGMENT AFFIRMED.

GARY M. GAERTNER, P.J. and JAMES R. DOWD, J., concur.