In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE
U.S. BANK, N.A., AS TRUSTEE OF THE ) No. ED108598
LIVING TRUST AGREEMENT OF )
LORENZ K. AYERS, DATED MAY 3, 1967,)
AS AMENDED AND RESTATED, ) Appeal from the Circuit Court
 ) of the City of St. Louis
 Respondent, ) Cause No. 1722-PR00637
 )
 vs. )
 )
ELIZABETH MOLK, )
 ) Honorable Rex M. Burlison
 Appellant, )
 )
 and )
 )
ANNE HERBST, CATHERINE HERBST, )
DONALD A. HERBST, MILES HERBST, )
DAVID C. MOLK, REBECCA B. MOLK and )
PETER F. MOLK, )
 )
 Defendants. ) Filed: January 19, 2021

 OPINION

 Elizabeth Molk (“Appellant”) appeals the probate court’s grant of the motion for

summary judgment filed by U.S. Bank, as trustee of the Living Trust Agreement of Lorenz K.

Ayers (“Grantor”), dated May 3, 1967, as amended and restated (the “Lorenz K. Ayers Trust”),

on U.S. Bank’s claim for declaratory judgment. Appellant raises five points on appeal related to

the probate court’s grant of U.S. Bank’s motion for summary judgment and award of attorney’s

 1
fees. U.S. Bank also filed a motion for appellate attorney’s fees with our Court that was taken

with the case.

 Finding that the probate court did not err, we affirm the judgment of the probate court.

Additionally, we grant U.S. Bank’s motion for attorney’s fees on appeal and remand to the

probate court for determination of U.S. Bank’s reasonable appellate attorney’s fees.

 I. Factual and Procedural Background

 On May 3, 1967, Grantor executed the instrument that established the Lorenz K. Ayers

Trust, which was created for the purpose of supporting Grantor during his lifetime and Grantor’s

wife, daughters (Helen A. Davis (“Helen”) and Barbara A. Herbst (“Barbara”)), and his

daughters’ descendants after Grantor’s death. The Lorenz K. Ayers Trust became irrevocable

when Grantor passed away in 1987. Pursuant to the terms of the Lorenz K. Ayers Trust

instrument, separate trusts were created for Helen and Barbara with the corpus of each trust

containing half of the assets in the Lorenz K. Ayers Trust following Grantor’s death. The Lorenz

K. Ayers Trust instrument further instructs that, following the death of each respective daughter,

the trust share of the deceased daughter would be further evenly split such that separate trusts

would be created for each of that daughter’s children (Grantor’s grandchildren) and maintained

by U.S. Bank as trustee.1

 Item Five, Section 6 of the Lorenz K. Ayers Trust instrument establishes that U.S. Bank,

as trustee, “shall pay the entire net income” of each grandchild’s trust to the subject grandchild-

beneficiary “in convenient installments, for the life of said beneficiary.” Item Five, Section 6

further states that, upon the death of a grandchild-beneficiary, the principal of that grandchild’s

1
 The Lorenz K. Ayers Trust instrument names “Mercantile Trust Company” as the corporate trustee for all trusts
created under that instrument; U.S. Bank absorbed Mercantile Trust Company through a merger following Grantor’s
execution of the Lorenz K. Ayers Trust instrument.

 2
separate trust shall be divided amongst the children of that grandchild-beneficiary (Grantor’s

great-grandchildren), or in the case of a grandchild-beneficiary dying childless, amongst “his or

her then heirs at law who are direct descendants of Grantor….” Once assets of the Lorenz K.

Ayers Trust are passed to Grantor’s great-grandchildren, each great-grandchild share shall be

held in a separate trust maintained by the trustee for the great-grandchild-beneficiary until he or

she reaches 21 years of age, at which time said great-grandchild share shall be distributed

outright and thus terminating the Lorenz K. Ayers Trust as to that share.

 Following Barbara’s death on or about October 15, 2015, individual trusts were

established (pursuant to the terms of the Lorenz K. Ayers Trust instrument) for her children

(Grantor’s grandchildren): Appellant, Anne Herbst (“Anne”), Catherine Herbst (“Catherine”),

and Donald A. Herbst (“Donald”). U.S. Bank acts as trustee for Anne’s, Catherine’s, and

Donald’s grandchild trusts, but not for Appellant’s. In 2016, after conferring with U.S. Bank’s

representatives, Anne requested that U.S. Bank, as trustee, convert her separate, individual

grandchild trust to a “unitrust” with 4% of the fair market value of her trust’s assets being paid to

her annually, pursuant to § 469.411.2 On July 20, 2016, U.S. Bank notified all qualified

beneficiaries of its intent to make Anne’s requested unitrust election, as required by § 469.411.5,

and, although not required by statute, provided all such beneficiaries the opportunity to consent

or object to the unitrust election. Appellant was the only qualified beneficiary who objected to

Anne’s requested unitrust election.

 As a result of Appellant’s objection to Anne’s requested unitrust election, U.S. Bank filed

its petition for declaratory judgment before the probate division of the Circuit Court of the City

of St. Louis on September 28, 2017, in which U.S. Bank requested that the court “enter judgment

2
 All references are to Mo. Rev. Stat. Cum. Supp. 2016.

 3
declaring U.S. Bank in its capacity as Trustee is authorized to make the unitrust election of

Anne[’s] separate share,” pursuant to § 469.411.5.3 Appellant and her children filed a joint

answer to U.S. Bank’s petition and also filed a counterclaim for declaratory judgment. In their

subsequently filed second amended counterclaim for declaratory judgment, Appellant and her

children argued that Anne’s requested unitrust election pursuant to § 469.411.5 would be

improper because such an election would be contrary to Grantor’s intent expressed in the Lorenz

K. Ayers Trust instrument in violation of § 469.411.5 (Count I) and that § 469.411 was

unconstitutional (Count II). Appellant and her children argued in their counterclaim for

declaratory judgment that Grantor’s intent was that the Lorenz K. Ayers Trust’s principal be

preserved for future generations, and per the terms of the Lorenz K. Ayers Trust instrument, the

assets of Anne’s separate, individual trust would pass to Appellant, Catherine, Donald and/or

their descendants upon Anne’s death because she has no children. Additionally, Appellant filed a

motion to withdraw her previous consent to U.S. Bank converting Donald’s grandchild trust to a

unitrust and for revocation of the unitrust election made for Catherine’s grandchild trust.4 In that

motion, Appellant again pointed out that, because Anne and Donald have no heirs and Catherine

only has one heir, “at least three quarters (3/4) of their trusts is distributable to [Appellant’s]

children.” U.S. Bank, Anne, Donald, and Catherine also filed motions requesting awards of

attorney’s fees from some combination of Appellant personally, Appellant’s grandchild trust,

and/or Appellant’s children; Appellant filed a motion conversely requesting an award of

attorney’s fees from U.S. Bank and Anne.

3
 Appellant, Anne, Catherine, Donald, and Catherine’s and Appellant’s children were listed as defendants.
4
 At the time of the below litigation, U.S. Bank had already converted Catherine’s grandchild trust to a unitrust and
was in the process of making a unitrust election for Donald’s grandchild trust.

 4
 Appellant filed a motion for partial summary judgment on Count I of her second

amended counterclaim for declaratory judgment and U.S. Bank shortly thereafter filed its cross-

motion for summary judgment on its declaratory judgment claim. In support of its cross-motion

for summary judgment, U.S. Bank filed its correlating statement of uncontroverted material

facts, memorandum of law, and exhibits containing the records detailing its maintenance as

trustee of the subject trusts deriving from the Lorenz K. Ayers Trust. The exhibits filed by U.S.

Bank correlated with the affidavit of Justin R. Meyer (“Meyer”), U.S. Bank’s Trust Managing

Director, who also previously served as a trust officer for U.S. Bank. In regards to U.S. Bank’s

cross-motion for summary judgment on its declaratory judgment claim, Appellant filed motions

to strike Meyer’s affidavit and U.S. Bank’s exhibits supporting its cross-motion for summary

judgment, but did not file a response to U.S. Bank’s cross-motion for summary judgment or its

statement of uncontroverted material facts. In her motions to strike Meyer’s affidavit and U.S.

Bank’s exhibits, Appellant argued why the affidavit did not sufficiently support the exhibits and

why the exhibits were inadmissible, but did not substantively respond to U.S. Bank’s cross-

motion for summary judgment or statement of uncontroverted material facts.

 After further pleadings, the probate court entered its order ruling on the parties’

preliminary motions, specifically denying Appellant’s motions to strike Meyer’s affidavit and

U.S. Bank’s exhibits. On June 28, 2019, the probate court entered its order granting U.S. Bank’s

cross-motion for summary judgment and denying Appellant’s motion for partial summary

judgment.5 The court thereafter on December 15, 2019, entered its order on the parties’ motions

for attorney’s fees. The probate court found in its December 15, 2019 order that, while Anne,

5
 On September 9, 2019, Appellant and her children filed a dismissal memorandum dismissing without prejudice
Appellant’s motion to withdraw her previous consent to Donald’s unitrust election and for revocation of Catherine’s
unitrust election and Count II of the second amended counterclaim.

 5
Donald, Appellant, and Appellant’s children were not personally entitled to an award of

attorney’s fees, “equity and justice in this matter require that [Appellant] be responsible for the

portion of the legal fees incurred by [U.S. Bank].” Noting several pleadings entered by Appellant

and that she “added a divisive element to the cause of action when she withdrew her prior

consent to the conversion of Donald’s separate trust,” the probate court ordered that Appellant

reimburse Anne’s, Catherine’s, and Donald’s grandchild trusts for the attorney’s fees incurred by

U.S. Bank in the following amounts: $94,693.26 to Anne’s grandchild trust and $20,291.25 to

each of the grandchild trusts for Donald and Catherine.

 This appeal follows.

 II. Discussion

 Appellant raises five points on appeal. Appellant asserts in her first, second, third, and

fourth points on appeal that the probate court erred in several ways by granting U.S. Bank’s

motion for summary judgment. Appellant further argues in her fifth point on appeal that the

probate court erred in ordering Appellant to reimburse various trusts stemming from the Lorenz

K. Ayers Trust for attorney’s fees incurred by U.S. Bank in litigating the case at bar. We address

Appellant’s points in the order in which they would be dispositive of the other points, first

collectively analyzing Points III and IV, then Points I and II collectively, and finally Point V.

Standard of Review for Points I - IV

 Review of a trial court’s grant of summary judgment is de novo, and we apply the same

criteria as the trial court in analyzing whether summary judgment was proper. Green v.

Fotoohighiam, 606 S.W.3d 113, 115 (Mo. banc 2020) (quoting Goerlitz v. City of Maryville, 333

S.W.3d 450, 452 (Mo. banc 2011)). We review the record in the light most favorable to the party

against whom summary judgment was entered and we afford that party the benefit of all

 6
reasonable inferences from the record. Id. at 116 (quoting Goerlitz, 333 S.W.3d at 453); Zygler v.

Hawkins Constr., 609 S.W.3d 61, 65 (Mo. App. E.D. 2020). “However, facts contained in

affidavits or otherwise in support of the [moving] party’s motion are accepted as true unless

contradicted by the non-moving party’s response to the summary judgment motion.” Green, 606

S.W.3d at 116 (quoting Goerlitz, 333 S.W.3d at 453); see also Kroner Invs., LLC v. Dann, 583

S.W.3d 126, 128 (Mo. App. E.D. 2019).

Analysis of Points III and IV

 In Appellant’s third point on appeal, she argues that the probate court “erred in

considering and relying upon [] Meyer’s affidavit in granting summary judgment in favor of

[U.S. Bank]” because Meyer’s affidavit did not comply with Rule 74.04(e).6 Specifically,

Appellant argues that Meyer’s affidavit was not compliant with Rule 74.04(e) in that it was not

“made on personal knowledge” and did not set forth “such facts as would be admissible in

evidence.” Appellant likewise asserts in her fourth point on appeal that the probate court “erred

in considering and relying upon purported bank records attached as exhibits to [] Meyer’s

affidavit” because such exhibits were not admissible under the business records exception to

hearsay pursuant to § 490.680, and consequently, would not have supported “facts as would be

admissible in evidence” as required by Rule 74.04(e).

 “Summary judgment is only proper if the moving party establishes that there is no

genuine issue as to the material facts and that the movant is entitled to judgment as a matter of

law.” Cent. Trust and Inv. Co. v. Signalpoint Asset Mgmt., LLC, 422 S.W.3d 312, 319 (Mo. banc

2014). For a movant to make a prima facie case that there is no genuine issue of material fact in

dispute:

6
 All references are to Missouri Supreme Court Rules (2018).

 7
 the movant must attach to the motion for summary judgment a statement of
 uncontroverted material facts that “state[s] with particularity in separately
 numbered paragraphs each material fact as to which movant claims there is no
 genuine issue, with specific references to the pleadings, discovery, exhibits[,] or
 affidavits that demonstrate the lack of a genuine issue as to such facts.”

Green, 606 S.W.3d at 116 (quoting Rule 74.04(c)(1)). Rule 74.04(c)(1) additionally requires that

the movant attach all discovery, exhibits, and affidavits that support the summary judgment

motion.

 Once a moving party makes a prima facie case that there are no genuine issues of

material fact, “the nonmovant must show by affidavits, depositions, answers to interrogatories, or

admissions on file that one or more of the material facts shown by the movant to be without any

genuine dispute is, in fact, genuinely disputed.” Theerman v. Frontenac Bank, 308 S.W.3d 756,

758 (Mo. App. E.D. 2010); see also Taylor v. Zoltek Cos., Inc., 18 S.W.3d 541, 543 (Mo. App.

E.D. 2000); Rule 74.04(c)(2). To do this, the non-moving party must respond to the movant’s

summary judgment motion by “set[ting] forth each statement of fact in its original paragraph

number and immediately thereunder admit or deny each of movant’s factual statements,” with

the response “support[ing] each denial with specific references to the discovery, exhibits or

affidavits that demonstrate specific facts showing that there is a genuine issue for trial.” Rule

74.04(c)(2); see also Fidelity Real Estate Co. v. Norman, 586 S.W.3d 873, 882 (Mo. App. W.D.

2019).

 In this case, Appellant never filed a response to U.S. Bank’s cross-motion for summary

judgment;7 Appellant only filed motions to strike Meyer’s affidavit and the exhibits containing

U.S. Bank’s records detailing its maintenance of the subject trusts originating from the Lorenz K.

Ayers Trust. “A response that does not comply with [] Rule 74.04(c)(2) with respect to any

7
 Appellant likewise never filed a response to U.S. Bank’s additional statement of uncontroverted material facts filed
in conjunction with Appellant’s motion for partial summary judgment.

 8
numbered paragraph in movant’s statement is an admission of the truth of that numbered

paragraph.” Rule 74.04(c)(2); see also Green, 606 S.W.3d at 117 (finding that the non-movant’s

failure to file a timely response to the movant’s summary judgment motion resulted in the non-

movant’s admission of all of movant’s stated uncontroverted material facts); Reverse Mortg.

Sols., Inc. v. Estate of Hunter, 479 S.W.3d 662, 667 (Mo. App. W.D. 2015) (stating that the non-

movant failed to establish or preserve any disputes of material fact by failing to timely file a

response to the summary judgment motion). Although Appellant failed to file a response to U.S.

Bank’s motion for summary judgment, she argues on appeal that the probate court still erred in

granting U.S. Bank’s motion because the court impermissibly considered Meyer’s affidavit and

U.S. Bank’s exhibits, which were the only bases of fact supporting U.S. Bank’s summary

judgment motion. Thus, if Meyer’s affidavit properly complied with Rule 74.04(e) and U.S.

Bank’s records were admissible evidence such that U.S. Bank sufficiently made a prima facie

case that no genuine issue of material fact was in dispute, the factual assertions made in U.S.

Bank’s summary judgment motion and statement of uncontroverted material facts must be taken

as true because Appellant failed to file a response. See Rule 74.04(c)(1)–(c)(2); Green, 606

S.W.3d at 117; Reverse Mortg. Sols., Inc., 479 S.W.3d at 667.

 Rule 74.04(e) requires that “[s]upporting and opposing affidavits shall be made on

personal knowledge, shall set forth such facts as would be admissible in evidence, and shall

show affirmatively that the affiant is competent to testify to the matters stated therein.” Our

Court recently elaborated on the requirements of Rule 74.04(e) as applied to the business records

exception to hearsay in Gateway Metro Fed. Credit Union v. Jones, 603 S.W.3d 315 (Mo. App.

E.D. 2020). In Gateway, we stated that:

 While an affidavit need not contain a particular “magic phrase” in order to establish
 that it is made on personal knowledge, the averments should still demonstrate that

 9
 the affiant has personal knowledge of the matters contained in the affidavit. On the
 other hand, an affidavit which relates information gained from other documents
 relates hearsay, not such facts as would be admissible in evidence, and is not
 sufficient to support a motion for summary judgment. In such a case, if the
 documents themselves qualify as business records, a party may submit them
 through use of a business records affidavit [(pursuant to § 490.692)] to avoid any
 hearsay issue.

Id. at 319–20 (internal quotations omitted) (citing Scott v. Ranch Roy-L, Inc., 182 S.W.3d 627,

635 (Mo. App. E.D. 2005); May & May Trucking, L.L.C. v. Progressive Nw. Ins. Co., 429

S.W.3d 511, 515 (Mo. App. W.D. 2014); Perry v. Kelsey-Hayes Co., 728 S.W.2d 278, 280 (Mo.

App. W.D. 1987)).

 In the case at bar, U.S. Bank’s records detailing its maintenance of the Lorenz K. Ayers

Trust as its corporate trustee, upon which Meyer’s affidavit largely relied, qualify as business

records pursuant to § 490.680. Section 490.680 states that:

 A record of an act, condition or event, shall, insofar as relevant, be competent
 evidence if the custodian or other qualified witness testifies to its identity and the
 mode of its preparation, and if it was made in the regular course of business, at or
 near the time of the act, condition or event, and if, in the opinion of the court, the
 sources of information, method and time of preparation were such as to justify its
 admission.

U.S. Bank’s records of its actions as trustee of the subject trusts deriving from the Lorenz K.

Ayers Trust certainly record “an act, condition or event” (specifically, evaluations of whether

Anne’s individual grandchild trust should be converted to a unitrust and correspondence with the

individual trusts’ beneficiaries) that (as indicated by Meyer’s affidavit) was made in the regular

course of business as a corporate trustee at or near the time of those acts, conditions, or events,

and the source of that information, method, and time of preparation justify the admission of those

records. See § 490.680. Further, from Meyer’s affidavit, he is clearly a “qualified witness” who

could testify to U.S. Bank’s records’ identity and mode of preparation and whether they were

made in the regular course of business; as indicated by his affidavit, Meyer has been employed

 10
as Trust Managing Director for U.S. Bank since August of 2016 and, prior to that time, served as

a trust officer for U.S. Bank, is familiar with U.S. Bank’s record-keeping practices, and had

reviewed the records that U.S. Bank, as trustee, maintained for the subject trusts. See CACH,

LLC v. Askew, 358 S.W.3d 58, 64 (Mo. banc 2012) (stating that, to be a “qualified witness”

pursuant to § 490.680, a person “must have ‘sufficient knowledge of the business operation and

methods of keeping records of the business to give the records probity’”) (quoting Asset

Acceptance v. Lodge, 325 S.W.3d 525, 528 (Mo. App. E.D. 2010)).

 Consequently, because U.S. Bank’s records were admissible under the business records

exception to hearsay pursuant to § 490.680, whether Meyer’s affidavit constituted a valid

business records affidavit pursuant to § 490.692 is determinative of whether that affidavit

fulfilled the requirements of Rule 74.04(e). See Gateway, 603 S.W.3d at 319–20. Section

490.692.1 establishes that:

 Any records or copies of records reproduced in the ordinary course of business by
 any photographic, photostatic, microfilm, microcard, miniature photographic,
 optical disk imaging, or other process which accurately reproduces or forms a
 durable medium for so reproducing the original that would be admissible under
 sections 490.660 to 490.690 shall be admissible as a business record, subject to
 other substantive or procedural objections, in any court in this state upon the
 affidavit of the person who would otherwise provide the prerequisites of sections
 490.660 to 490.690, that the records attached to the affidavit were kept as required
 by section 490.680.

Section 490.692.3 thereafter provides an example of the “form and content” that may be used in

such a business records affidavit, which notably includes: that the affiant is “personally

acquainted with the facts” stated within the affidavit; describes the records which purportedly

constitute business records; that the records were kept “in the regular course of business”; that it

was the regular course of business for an employee or representative “with knowledge of the act,

event, condition, opinion, or diagnosis recorded to make the record or to transmit information

 11
thereof to be included in such record”; that “the record was made at or near the time of the act,

event, condition, opinion or diagnosis”; and that the records attached to the affidavit “are the

original or exact duplicates of the original.”

 By simply examining Meyer’s affidavit, it is clear that it substantively complies with

§ 490.692 to constitute a valid business records affidavit. While not exactly matching the

example business records affidavit set forth in § 490.692.3, Meyer’s affidavit contains all of the

content provided in that example. Specifically, in paragraph 4 of his affidavit, Meyer attests: that

he is familiar with the facts set forth in the affidavit from his review of the records, his personal

knowledge, and his communications with other U.S. Bank employees; to the nature of the

subject records (describing them as “correspondence, reports, and completed forms”); that the

records were kept in U.S. Bank’s regular course of business; that it is a regular practice of U.S.

Bank’s regularly conducted business activities to record the information contained in the records;

and that “[t]he entries in those records are made at the time of the events and conditions they

describe either by people with first-hand knowledge of those events and conditions or from

information provided by people with such first-hand knowledge.” Additionally, throughout the

affidavit, Meyer attests that “[a] true and correct copy” of each pertinent record is attached to the

affidavit. Although Meyer’s affidavit does not exactly match the form of the example business

record affidavit provided in § 490.692.3, that subsection does not require such affidavits to do so,

specifically stating that “[t]he affidavit permitted by this section may be in form and content

substantially as follows…” (emphasis added). In sum, Meyer’s affidavit sufficiently complied

with § 490.692 such that it constituted a valid business record affidavit, and thus satisfied the

requirements of Rule 74.04(e). See Gateway, 603 S.W.3d at 319–20.8

8
 Contrary to Appellant’s argument, our holding in Gateway does not support her position. Our Court reversed the
trial court’s grant of summary judgment in Gateway primarily because the required business records or copies of

 12
 Thus, because U.S. Bank’s exhibits were admissible under the business records exception

to hearsay pursuant to § 490.680 and Meyer’s affidavit constituted a valid business record

affidavit pursuant to § 490.692, the probate court did not err in considering Meyer’s affidavit or

the exhibits in granting U.S. Bank’s summary judgment motion. See Rule 74.04(e); Gateway,

603 S.W.3d at 319–20. As the probate court did not err in considering U.S. Bank’s exhibits and

Meyer’s affidavit, U.S. Bank made a prima facie case that no genuine issue of material fact was

in dispute. See Rule 74.04(c)(1); Green, 606 S.W.3d at 117; Reverse Mortg. Sols., Inc., 479

S.W.3d at 667. Because Appellant failed to file a response to U.S. Bank’s motion for summary

judgment and statement of uncontroverted material facts, the facts stated by U.S. Bank (which

are based upon its exhibits and Meyer’s affidavit) must be taken as true. See Rule 74.04(c)(2);

Green, 606 S.W.3d at 117; Reverse Mortg. Sols., Inc., 479 S.W.3d at 667. Consequently, there

was no genuine issue of material fact in regards to U.S. Bank’s summary judgment motion.

 Appellant’s Points III and IV are denied.

Analysis of Points I and II

 Appellant asserts in her first and second points on appeal that the probate court erred in

granting U.S. Bank’s summary judgment motion because U.S. Bank was not entitled to judgment

as a matter of law. In her first point, Appellant argues that the probate court erred in entering

those records were not attached to the subject business records affidavit that was executed by the Vice President of
Risk Management for Gateway Metro Federal Credit Union. Gateway, 603 S.W.3d at 320–21. We concluded that
the affidavit in that case constituted hearsay and did not sufficiently support the motion for summary judgment
specifically because the affidavit “contain[ed] information gained from records, rather than [the affiant]’s personal
knowledge.” Id. at 320. We reasoned that, without the subject records attached to the affidavit, the affiant’s
purported knowledge of the facts stated in her affidavit (which was gained exclusively from those records) could not
meet the “personal knowledge” requirement of Rule 74.04(e) solely from her position as Vice President of Risk
Management. Id. at 320–22.

Distinguishable in this case is that exact copies of the subject business records were attached to Meyer’s affidavit
and that Meyer stated in his affidavit that he was familiar with the facts therein from his review of those business
records and his personal knowledge. Our Court’s opinion in Gateway certainly indicates that a valid business
records affidavit that has the required records or copies of such attached meets the requirements of Rule 74.04(e)
and sufficiently supports a motion for summary judgment, as is the case here. See id.

 13
summary judgment on U.S. Bank’s declaratory judgment claim that it was permitted to make

Anne’s requested unitrust election pursuant to § 469.411.5. Specifically, Appellant argues that

U.S. Bank was not entitled to judgment as a matter of law on that claim because the Lorenz K.

Ayers Trust instrument specifically prohibited the unitrust election sought by Anne. And in her

second point, Appellant contends that the probate court erroneously entered summary judgment

in U.S. Bank’s favor because U.S. Bank failed to comply with the requirements of §§ 469.403

and 469.405 before attempting to convert Anne’s grandchild trust to a unitrust pursuant to

§ 469.411.5.

 Before analyzing Appellant’s first and second points, we note that, based upon our

independent research, no Missouri appellate court has substantively applied or addressed

§ 469.411 since its enactment in 2001. Section 469.411 (entitled “Determination of unitrust

amount--definitions--exclusions to average net fair market value assets--applicability of section

to certain trusts--net income of trust to be unitrust amount, when”) authorizes trustees in certain

circumstances to convert a beneficiary’s interest in an existing trust from an “income interest” to

a “unitrust interest”—that is, one that receives “a percent of the entire trust … rather than just the

income.”9 See Thomas K. Riley, NEW DRAFTING ISSUES FOR REVOCABLE TRUSTS, 62 J.

Mo. B. 22, 27 (2006). Section 469.411.5 establishes that:

 This section shall apply to the following trusts:

 (1) Any trust created after August 28, 2001, with respect to which the terms of the
 trust clearly manifest an intent that this section apply;

 (2) Any trust created under an instrument that became irrevocable on, before, or
 after August 28, 2001, if the trustee, in the trustee’s discretion, elects to have this
 section apply unless the instrument creating the trust specifically prohibits an

9
 Section 469.411.1(1) states that, “if the provisions of this section apply to a trust, the unitrust amount determined
for each accounting year of the trust shall be a percentage between three and five percent of the average net fair
market value of the trust….” In this case, Anne requested the annual unitrust amount of 4% of her separate,
individual grandchild trust’s average net fair market value.

 14
 election under this subdivision. The trustee shall deliver notice to all qualified
 beneficiaries and the settlor of the trust, if he or she is then living, of the trustee’s
 intent to make such an election at least sixty days before making that election. The
 trustee shall have sole authority to make the election. Section 469.402 shall apply
 for all purposes of this subdivision. An action or order by any court shall not be
 required. The election shall be made by a signed writing delivered to the settlor of
 the trust, if he or she is then living, and to all qualified beneficiaries. The election
 is irrevocable, unless revoked by order of the court having jurisdiction of the trust.
 The election may specify the percentage used to determine the unitrust amount
 pursuant to this section, provided that such percentage is between three and five
 percent, or if no percentage is specified, then that percentage shall be three percent.
 In making an election pursuant to this subsection, the trustee shall be subject to the
 same limitations and conditions as apply to an adjustment between income and
 principal pursuant to subsections 3 and 4 of section 469.405; and

 (3) No action of any kind based on an election made by a trustee pursuant to
 subdivision (2) of this subsection shall be brought against the trustee by any
 beneficiary of that trust three years from the effective date of that election.

 In this case, § 469.411.5(1) cannot apply, as the Lorenz K. Ayers Trust was created

before August 28, 2001. U.S. Bank argues that it may, in its discretion as trustee, convert Anne’s

separate grandchild trust to a unitrust pursuant to § 469.411.5(2), while Appellant conversely

argues that it may not. The parties agree that the Lorenz K. Ayers Trust instrument “became

irrevocable on, before, or after August 28, 2001,” but disagree as to whether the Lorenz K. Ayers

Trust instrument “specifically prohibits an election under [§ 469.411.5(2)].”

 “In determining the meaning of trust provisions, the paramount rule of construction is

that the grantor’s intent is controlling and such intention must be ascertained primarily from the

trust instrument as a whole.” Arthaud v. Arthaud, 600 S.W.3d 882, 888 (Mo. App. E.D. 2020)

(quoting Brown v. Brown, 530 S.W.3d 35, 41 (Mo. App. E.D. 2017)). When interpreting a trust

instrument, we “must consider the ‘general scheme or intention as shown by the entire

document.’” In Matter of Edwin Meissner Testamentary Trust, 497 S.W.3d 860, 863 (Mo. App.

E.D. 2016) (quoting Mercantile Trust Co. v. Sowell, 359 S.W.2d 719, 723 (Mo. banc 1962)).

Further, it is not the function of this Court to impart an intent to the grantor that is not expressed

 15
in the trust instrument. Thompson v. Koenen, 396 S.W.3d 429, 437 (Mo. App. W.D. 2013)

(quoting Kimberlin v. Dull, 218 S.W.3d 613, 616 (Mo. App. W.D. 2007)).

 From examining the Lorenz K. Ayers Trust instrument in its entirety, we find that it does

not contain any provision specifically prohibiting a unitrust election made pursuant to

§ 469.411.5(2). Appellant argues that the mere fact that the Lorenz K. Ayers Trust establishes

“income only” trusts (i.e., that beneficiaries are only entitled to income earned on a trust’s assets)

equates a specific prohibition against such a unitrust conversion because the principal of the

Lorenz K. Ayers Trust cannot be invaded. However, that argument is not only circular

considering the function of § 469.411 (to enable trustees to make a unitrust election for an

existing trust for which a beneficiary has an income interest), but is also contrary to the intent

expressed by Grantor in the Lorenz K. Ayers Trust instrument.

 Throughout the instrument, Grantor permits the trustees (including U.S. Bank) to intrude

upon the principal of a trust created for a beneficiary. Pertinently, after instructing that the

trustees “may in their sole discretion apply any part or all of the net income or principal of the

trust directly toward the support, care and benefit” of an incapacitated trust beneficiary in Item

One, section 7 of the instrument, Grantor further broadly authorizes the trustees to “do all other

similar or dissimilar things which the Trustees deem to be for the benefit of said trust and the

various beneficiaries thereof, whether or not such things are hereinabove specifically set forth.”

Thus, contrary to Appellant’s contention, the Lorenz K. Ayers Trust instrument, if anything,

authorizes U.S. Bank to make the sought unitrust distribution under § 469.411.5(2) (an annual

unitrust payment to Anne of 4% of the average net fair market value of her individual grandchild

trust) rather than the inverse. Regardless, the Lorenz K. Ayers Trust instrument contains no

provision that, explicitly or effectively, specifically prohibits a unitrust election under

 16
§ 469.411.5(2).10

 Further, to Appellant’s second point on appeal, it is clear that a trustee must comply with

certain other sections contained within Chapter 469 in order to make a unitrust distribution

pursuant to § 469.411.5(2). Section 469.411.5(2) itself notably states that “[s]ection 469.402

shall apply for all purposes of this subdivision,” and that “[i]n making an election pursuant to

this subsection, the trustee shall be subject to the same limitations and conditions as apply to an

adjustment between income and principal pursuant to subsections 3 and 4 of section 469.405[.]”

Section 469.402 simply states that “[t]he provisions of sections 456.3-301 to 456.3-305 shall

apply to sections 469.401 to 469.467 for all purposes.” Sections 456.3-301 to 456.3-305 pertain

to representation in the administration of a trust, and are not at issue in this case. Section

469.405.3–.4 states in its entirety:

 3. A trustee may not make an adjustment:

 (1) That diminishes the income interest in a trust which requires all of the income
 to be paid at least annually to a spouse and for which an estate tax or gift tax marital
 deduction would be allowed, in whole or in part, if the trustee did not have the
 power to make the adjustment;
 (2) That reduces the actuarial value of the income interest in a trust to which a
 person transfers property with the intent to qualify for a gift tax exclusion;
 (3) That changes the amount payable to a beneficiary as a fixed annuity or a fixed
 fraction of the value of the trust assets;
 (4) From any amount that is permanently set aside for charitable purposes under a
 will or the terms of a trust to the extent that the existence of the power to adjust
 would change the character of the amount set aside for federal income, gift or estate
 tax purposes;
 (5) If possessing or exercising the power to make an adjustment causes an
 individual to be treated as the owner of all or part of the trust for income tax

10
 Appellant posits that it would be impossible or illogical for a grantor to execute a trust instrument prior to the
enactment of § 469.411 that specifically prohibited a unitrust election pursuant to § 469.411.5(2). Obviously, a trust
instrument that was executed and became irrevocable before August 28, 2001 (the effective date of § 469.411),
would not explicitly state that “a unitrust election pursuant to § 469.411.5(2) is prohibited”; however, such an
instrument could contain a specific provision(s) that explicitly or effectively prohibits a unitrust conversion under
§ 469.411.5(2) (e.g., “the trustee shall not encroach upon the trust’s principal,” “only the trust’s income shall be
distributed to the beneficiary,” etc.). Here, not only does the Lorenz K. Ayers Trust instrument not contain such a
provision, but it specifically provides U.S. Bank, as trustee, the discretion to distribute parts or all of the income or
principal of a trust created by the instrument as U.S. Bank deems necessary.

 17
 purposes, and the individual would not be treated as the owner if the trustee did not
 possess the power to make an adjustment;
 (6) If possessing or exercising the power to make an adjustment causes all or part
 of the trust assets to be included for estate tax purposes in the estate of an individual
 who has the power to remove or appoint a trustee, or both, and the assets would not
 be included in the estate of the individual if the trustee did not possess the power to
 make an adjustment;
 (7) If the trustee is a beneficiary of the trust; or
 (8) If the trustee is not a beneficiary, but the adjustment would benefit the trustee
 directly or indirectly.

 4. If subdivision (5), (6), (7) or (8) of subsection 3 of this section applies to a trustee
 and there is more than one trustee, a cotrustee to whom the provision does not apply
 may make the adjustment unless the exercise of the power by the remaining trustee
 or trustees is not permitted by the terms of the trust.

 It is clear that the restrictions on a trustee set forth in § 469.405.3–.4 do not affect the

disposition of this case, as none of the listed restrictions that limit when a trustee may make an

adjustment pursuant to § 469.405 or make a unitrust election pursuant to § 469.411.5(2) match

the factual circumstances of the case at bar. Appellant argues that U.S. Bank was required to

comply with the standards of § 469.405.1–.2 (governing the statutory power of trustees to make

adjustments between a trust’s income and principal) before attempting to convert Anne’s

separate grandchild trust to a unitrust. However, that argument not only ignores that neither

§ 469.411.5(2) nor § 469.405.1–.2 instructs that those requirements should apply to a unitrust

election made pursuant to § 469.411.5(2), but that argument also unnecessarily conflates a

statutory adjustment made under § 469.405 and a unitrust election made under § 469.411. We

give effect to the legislature’s intent by considering a statute’s plain and ordinary meaning, see

Howard v. SSM St. Charles Clinic Med. Grp., Inc., 364 S.W.3d 242, 244 (Mo. App. E.D. 2012),

and the plain and ordinary language of §§ 469.411.5(2) and 469.405 indicates that the legislature

only intended that § 469.405.3–.4 apply to unitrust elections made under § 469.411.5(2)—to the

 18
exclusion of § 469.405.1–.2. Thus, U.S. Bank’s conversion of Anne’s separate grandchild trust to

a unitrust was not prohibited by any provision of § 469.405. See § 469.411.5(2).

 The only remaining provision of Chapter 469 that affects a trustee’s conversion of a trust

to a unitrust pursuant to § 469.411.5(2) is § 469.403.2.11 Section 469.403.2 states:

 In exercising the power to adjust pursuant to section 469.405 or a discretionary
 power of administration regarding a matter within the scope of sections 469.401 to
 469.467, whether granted by the terms of a trust, a will, or sections 469.401 to
 469.467, a fiduciary shall administer a trust or estate impartially, based on what is
 fair and reasonable to all of the beneficiaries, except to the extent that the terms of
 the trust or the will clearly manifest an intent that the fiduciary shall or may favor
 one or more of the beneficiaries. A determination in accordance with sections
 469.401 to 469.467 is presumed to be fair and reasonable to all of the beneficiaries.

As § 469.411.5(2) grants a trustee the discretion to make a unitrust election under that

subsection, it is undoubtedly a “discretionary power of administration regarding a matter within

the scope of sections 469.401 to 469.467” that is granted by § 469.411.5(2), which is obviously

within §§ 469.401 to 469.467. See § 469.403.2. As such, a trustee making a unitrust election

pursuant to § 469.411.5(2) must administer the subject trust impartially, “based on what is fair

and reasonable to all of the beneficiaries,” and the determination of a trustee to convert a trust to

a unitrust under that section “is presumed to be fair and reasonable to all of the beneficiaries.”

See § 469.403.2.

 In the present case, as stated in U.S. Bank’s statement of uncontroverted material facts,

U.S. Bank made the determination that it would be acting impartially by converting Anne’s

separate grandchild trust to a unitrust.12 Pursuant to § 469.411.5(2), U.S. Bank, as trustee, has the

11
 Section 469.403.1 does not apply to unitrust elections made pursuant to § 469.411.5(2), as § 469.403.1
specifically states that it applies only “[i]n allocating receipts and disbursements to or between principal and income,
and with respect to any matter within the scope of sections 469.413 to 469.421….”
12
 Contrary to Appellant’s contention, U.S. Bank asserts in its statement of uncontroverted material facts (supported
by Meyer’s affidavit and U.S. Bank’s exhibits) that it made this impartiality determination in evaluating whether
Anne’s separate grandchild trust should be converted to a unitrust. Appellant attempts to create an issue of fact
regarding whether U.S. Bank did make this determination, but Appellant admitted the truth that U.S. Bank had made
such a determination by failing to respond to U.S. Bank’s summary judgment motion and statement of

 19
sole authority to make a unitrust election under that subsection and may do so in its discretion if

that subsection applies, and its determination to do so “is presumed to be fair and reasonable to

all of the beneficiaries.” See § 469.403.2. By failing to respond to U.S. Bank’s summary

judgment motion or statement of uncontroverted material facts, Appellant admitted the truth of

U.S. Bank’s factual assertion that it had determined that it would be acting impartially by making

Anne’s sought unitrust election. See supra II. Discussion, Analysis Points III and IV; Rule

74.04(c)(2); Green, 606 S.W.3d at 117; Reverse Mortg. Sols., Inc., 479 S.W.3d at 667. By failing

to respond to U.S. Bank’s summary judgment motion and statement of facts, and thereby

admitting U.S. Bank’s stated factual assertions, Appellant effectively conceded that U.S. Bank’s

determination to convert Anne’s trust to a unitrust was fair and reasonable and consequently

failed to overturn the statutory presumption established by § 469.403.2.

 Thus, because the Lorenz K. Ayers Trust instrument did not specifically prohibit a

unitrust election such that U.S. Bank could convert Anne’s separate grandchild trust to a unitrust

pursuant to § 469.411.5(2) and because §§ 469.402, 469.403.2, and 469.405.3–.4 allowed such a

conversion, U.S. Bank was entitled to judgment as a matter of law on its declaratory judgment

claim. The probate court therefore did not err in granting U.S. Bank’s motion for summary

judgment.

 Appellant’s Points I and II are denied.

Point V

 In her fifth point on appeal, Appellant argues that the probate court abused its discretion

in ordering Appellant to reimburse Anne’s, Catherine’s, and Donald’s separate grandchild trusts

uncontroverted material facts. See Rule 74.04(c)(2); Green, 606 S.W.3d at 117; Reverse Mortg. Sols., Inc., 479
S.W.3d at 667. Additionally, we note that U.S. Bank’s records clearly indicate that it made such a determination in
conducting its final evaluation of whether to convert Anne’s separate grandchild trust to a unitrust.

 20
for attorney’s fees incurred by U.S. Bank because that award was neither just nor equitable and

was thus unauthorized by § 456.10-1004. Appellant specifically argues that her actions in the

below litigation were reasonable as opposed to vexatious, as she was trying to defend her and her

children’s contingent remainder interests in Anne’s, Catherine’s, and Donald’s separate

grandchild trusts.

 Standard of Review

 Where an award of attorney’s fees is authorized by law, we review a trial court’s award

of attorney’s fees for abuse of discretion. Berry v. Volkswagen Grp. of Am., Inc., 397 S.W.3d

425, 430 (Mo. banc 2013). A trial court’s award of attorney’s fees is an abuse of discretion and

requires reversal only if it is “clearly against the logic of the circumstances then before the court

and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful

consideration.” City of Byrnes Mill v. Limesand, 599 S.W.3d 466, 477 (Mo. App. E.D. 2020)

(quoting State v. Donovan, 539 S.W.3d 57, 69 (Mo. App. E.D. 2017)); see also Berry, 397

S.W.3d at 431.

 Analysis

 It is the general rule in Missouri that “attorney fees are not awarded to every successful

litigant.” Berry, 397 S.W.3d at 431. However, a trial court may award attorney’s fees when a

party is entitled to them via contract or when the award is authorized by statute. Id.; Parkway

Constr. Servs., Inc. v. Blackline LLC, 573 S.W.3d 652, 666 (Mo. App. E.D. 2019). Further, we

consider trial courts to be experts on awarding attorney’s fees because they are best positioned to

make such determinations. Parkway Constr. Servs., Inc., 573 S.W.3d at 669; see also Hazelcrest

III Condo. Ass’n v. Bent, 495 S.W.3d 200, 209 (Mo. App. E.D. 2016); Berry, 397 S.W.3d at 430.

 In this case, the probate court was authorized to award attorney’s fees pursuant to

 21
§ 456.10-1004, which broadly states that “[i]n a judicial proceeding involving the administration

of a trust, the court, as justice and equity may require, may award costs and expenses, including

reasonable attorney’s fees, to any party, to be paid by another party or from the trust that is the

subject of the controversy.” The probate court exercised the discretion granted to it by § 456.10-

1004 in ordering Appellant to reimburse Anne’s, Catherine’s, and Donald’s grandchild trusts for

the attorney’s fees incurred by U.S. Bank. Specifically, in its December 15, 2019 order, the

probate court ordered Appellant to reimburse $94,693.26 to Anne’s grandchild trust and

$20,291.25 to each of the grandchild trusts for Catherine and Donald because the court believed

that equity and justice required such an award. The probate court noted that Appellant “added a

divisive element to the cause of action when she withdrew her prior consent to the conversion of

Donald’s separate trust” and that “[her] actions were solely intended to protect her personal

interest in her separate trust.”

 Considering the procedural circumstances of this case, we cannot say that the probate

court’s award of attorney’s fees was clearly against the logic of those circumstances or is so

arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful

consideration. See City of Byrnes Mill, 599 S.W.3d at 477; Berry, 397 S.W.3d at 431. It is clear

from the record that Appellant did more than simply defend against U.S. Bank’s declaratory

judgment claim, as Appellant contends. Appellant did not just file responsive defensive

pleadings to U.S. Bank’s petition for declaratory judgment, but instead additionally filed

multiple counterclaims and attempted to widen the scope of the litigation below even further by

trying to withdraw her previous consents to the conversions of Catherine’s and Donald’s separate

grandchild trusts to unitrusts (which were not part of the initial claim filed by U.S. Bank). And,

as the probate court noted, Appellant’s explicit intent in filing her counterclaims and motions to

 22
withdraw her previous consents was to limit the amounts that Anne, Catherine, and Donald could

receive from their separate grandchild trusts so that Appellant and her children would receive the

most possible from the remainders of those trusts. This is certainly noteworthy considering that

Appellant and her children are not expressly indicated as recipients of Anne’s, Catherine’s, or

Donald’s trusts by the Lorenz K. Ayers Trust instrument, but rather, are the contingent

beneficiaries of those separate trusts if Anne, Catherine, and/or Donald die childless.13

Appellant’s actions undoubtedly prolonged and complicated the case below more so than if

Appellant had only defended the relatively straight-forward legal claim asserted by U.S. Bank.

 The probate court clearly accounted for these aforementioned circumstances in its order

awarding attorney’s fees and found that equity and justice required its award considering such

circumstances. See § 456.10-1004. Accordingly, we cannot say that the probate court’s award of

attorney’s fees was arbitrarily arrived at or unreasonable, nor that it indicates indifference or a

lack of proper judicial consideration. See City of Byrnes Mill, 599 S.W.3d at 477; Berry, 397

S.W.3d at 431. Thus, the probate court did not abuse its discretion in granting U.S. Bank’s

motion for attorney’s fees and ordering Appellant to reimburse Anne’s, Catherine’s, and

Donald’s grandchild trusts for the attorney’s fees incurred by U.S. Bank.

 Appellant’s Point V is denied.

U.S. Bank’s Motion for Attorney’s Fees on Appeal

 Similar to its motion for attorney’s fees before the probate court, U.S. Bank argues in its

motion for appellate attorney’s fees that it is entitled to attorney’s fees on appeal pursuant to

§ 456.10-1004. We are authorized to award attorney’s fees in this case pursuant to § 456.10-

1004, and consistent with our conclusion on Appellant’s Point V, we grant U.S. Bank’s motion

13
 We again recognize that Catherine is not childless, but include her in this analysis as Appellant did in her
pleadings.

 23
for appellate attorney’s fees finding that equity and justice require such an award. See § 456.10-

1004. In particular, we again note Appellant’s actions before the probate court that caused U.S.

Bank to incur additional attorney’s fees precipitating and during this appeal. See supra II.

Discussion, Point V, Analysis.

 “While we have the ‘authority to allow and fix the amount of [attorney’s] fees on appeal,

we exercise this power with caution, believing in most cases that the trial court is better equipped

to hear evidence and argument on this issue and determine the reasonableness of the fee

requested.’” Lehman v. Auto. Invs., LLC, 608 S.W.3d 733, 741 (Mo. App. E.D. 2020) (quoting

Jamestowne Homeowners Ass’n Trs. v. Jackson, 417 S.W.3d 348, 360 (Mo. App. E.D. 2013)).

We therefore remand to the probate court for the sole purpose of determining U.S. Bank’s

reasonable appellate attorney’s fees.

 III. Conclusion

 For the foregoing reasons, we affirm the judgment of the probate court and remand for

the probate court to determine U.S. Bank’s reasonable attorney’s fees on appeal.

 _______________________________
 Colleen Dolan, P.J.

Mary K. Hoff, J., concurs.
Robert M. Clayton III, J., concurs.

 24